716 So.2d 301 (1998)
Nevil McDonald LOPEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 96-2065.
District Court of Appeal of Florida, Third District.
July 29, 1998.
*302 Bennett H. Brummer, Public Defender, and John M. Selden, Special Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Linda S. Katz, Assistant Attorney General, for appellee.
Before COPE, GERSTEN and SORONDO, JJ.
COPE, Judge.
Nevil McDonald Lopez appeals his convictions for two counts of attempted first-degree murder with a firearm and three counts of aggravated assault with a firearm. He also challenges his adjudication on two counts as a habitual offender. We affirm in part and reverse in part.
The criminal charges arose from what began as an altercation between the defendant-appellant Lopez and his wife, Lynette Laimes. Ms. Laimes attended a birthday party and went outside to the parking lot of the apartment building for some fresh air. A few minutes later defendant drove up in a white truck. Defendant got out with a gun in his hand, put his hand on Ms. Laimes' neck, and the two began struggling. Defendant then returned to his truck, apparently waiting for Ms. Laimes to get in her own car and follow him. When she did not do so, defendant got out of his truck again, said "babe, babe, problem," and began firing his weapon in Ms. Laimes' direction. Ms. Laimes dropped to the ground but was not injured. The partygoers in the parking lot began running away.
Craig Manor and Darryl Mathis were attempting to leave the party when they inadvertently encountered defendant in the parking lot, still armed. Manor and Mathis took shelter on one side of a parked car while defendant pointed his gun at them from the other side of the car. Manor heard a click, which he interpreted to be defendant's attempt to fire the gun, and it misfired, or possibly the defendant tapped the gun on the car window. Mathis fled. Defendant came around the car and held Manor at gunpoint. By this time there had been many gunshots, and Manor believed that once defendant began firing his weapon, others at the party may have fired back.[1] Manor attempted to *303 assure defendant that he had not fired a gun at defendant. After staring at Manor for a few moments, defendant turned and jogged across the street, disappearing behind other apartment buildings. Defendant left behind the white truck. The truck was impounded by police and later, after defendant's arrest, was released to Ms. Laimes at defendant's instruction.
Defendant was charged with aggravated assault with a firearm on Ms. Laimes, based on the first encounter between Ms. Laimes and defendant, and was charged with attempted first-degree murder of Ms. Laimes with a firearm, based on his shooting at her. Defendant was charged with attempted firstdegree murder of Manor based on the apparent attempt to fire the weapon at Manor. Defendant was charged with aggravated assault of Manor and Mathis, based on defendant's holding both men at gunpoint. Ms. Laimes, defendant's wife, refused all cooperation with the authorities and did not testify at trial. Mathis did not testify because he could not be located. The trial proceeded on the basis of other witnesses and evidence. Defendant was convicted as charged and this appeal follows.

I.
Defendant argues that the trial court erred by admitting as substantive evidence an eyewitness statement given to Officer Brajic immediately after the shooting incident by Vanessa Burse. Upon hearing gunshots, Ms. Burse called 911 and then looked out of the window of the apartment where the party was being given. She observed defendant in the parking lot with the weapon and described a portion of his activities. She did not know the defendant, but gave the police a good physical description of him. When Officer Brajic testified to Ms. Burse's statements, defendant objected on hearsay grounds.
The defense objections were properly overruled. The State established that in the aftermath of the shooting incident, the witnesses were excited and upset. The testimony was properly admitted under the hearsay exception for excited utterances. See § 90.803(2), Fla. Stat. (1995); Williams v. State, 714 So.2d 462 (Fla. 3d DCA 1997).[2]

II.
Defendant argues that the trial court erred by refusing to give a limiting instruction to the jury that certain prior inconsistent statements of Craig Manor could only be considered for impeachment purposes, not as substantive evidence. On two occasions during the direct examination of Manor, and on three occasions during redirect examination, the State impeached Manor with inconsistencies between Manor's in-court testimony and his pretrial sworn statement given to the prosecutor. At the time of the impeachment, defendant did not request a limiting instruction.
After Manor left the stand, and another witness had testified, defendant for the first time requested that the jury be given a limiting instruction that Manor's prior inconsistent statements could be considered by the jury solely for impeachment purposes and not as substantive evidence. The request was denied.
We conclude that the request was untimely and sustain the denial on that basis. "[S]ection 90.107, Florida Statutes, provides that where evidence is properly admitted for a limited purpose such as to cast doubt on a witness's credibility, `the court, upon request, shall restrict such evidence to its proper scope and so inform the jury at the time it is admitted.' (Emphasis supplied.)" Lightfoot v. State, 591 So.2d 305, 306 (Fla. 1st DCA 1991); see State v. Smith, 573 So.2d 306, 317 (Fla.1990) ("Because no requests for instructions were made contemporaneous to the introduction of other alleged prior inconsistent statements, the trial court did not err by failing to specially instruct the jury."); *304 Charles W. Ehrhardt, Florida Evidence § 608.4, at 424 (1998 ed.).[3]

III.
Defendant contends that the trial court erred by overruling his hearsay objection when Sergeant Frisenda testified about Craig Manor's pretrial statements expressing fear of defendant. As Manor's statements fall within the hearsay exception for thenexisting mental, emotional, or physical condition, the hearsay objections were properly overruled.
At trial, Manor retreated in certain respects from his pretrial statements to the police officers and prosecutor, including expressing some uncertainty about his pretrial identification of defendant. In order to show the motivation for this, the State asked Sergeant Frisenda about his conversation with Manor when the Sergeant served trial subpoenas on him. Sergeant Frisenda testified:
A. He advised that he was in fear of the Defendant and the friends of the Defendant, afraid of retaliation if he testified, but when we explained the requirements of the subpoena to appear in court, he agreed that he would appear.
Q. Did you go the second time that he was served?
A. Yes, I did.
....
Q. What did he say to you this time?
A. The second time he reiterated his fear to testify against the Defendant and to state his observations of the incident in court. Again, stating that he was in fear of retaliation by friends of the Defendant. He also advised that to protect himself or to not fall into danger with this person's friends he might not be totally truthful with the court as far as the identity of the Defendant.

(Emphasis added).
Section 90.803(3), Florida Statutes, creates a hearsay exception for:
(3) Then-existing mental, emotional, or physical condition.
(a) A statement of the declarant's then-existing state of mind, emotion, or physical sensation, including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health, when such evidence is offered to:

1. Prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when such state is an issue in the action.
2. Prove or explain acts of subsequent conduct of the declarant.

(b) However, this subsection does not make admissible:
1. An after-the-fact statement of memory or belief to prove the fact remembered or believed, unless such statement relates to the execution, revocation, identification, or terms of the declarant's will.
2. A statement made under circumstances that indicate its lack of trustworthiness.
(Emphasis added).
Prior to trial, Manor had been unequivocal in his identification of defendant from the photo lineup. However, when subpoenaed for trial Manor told Sergeant Frisenda that for reasons of fear and self protection, he *305 might not be totally truthful with the court as far as the identity of the defendant was concerned. At trial, Manor repeatedly expressed uncertainty about his identification of the defendant. Manor's statements to Sergeant Frisenda came within the section 90.803(3) hearsay exception and were admissible to explain Manor's subsequent conduct, namely, his trial testimony. See id. § 90.803(3)(a)2; Avila v. State, 545 So.2d 450, 451 (Fla. 3d DCA 1989); see also United States v. Cerone, 452 F.2d 274, 288 (7th Cir.1971); United States v. Schennault, 429 F.2d 852, 855 (7th Cir.1970).
Defendant contends that the testimony was unfairly prejudicial but we disagree. Manor told the officer point blank that because of fear he planned to alter his trial testimony. The jury was entitled to know this. Under the circumstances, it was not unfairly prejudicial to refer to Manor's fear. Defendant had escalated a minor quarrel with his wife into a shooting spree which culminated in defendant holding Manor at gunpoint. Any reasonable person in Manor's position would be fearful of defendant. The probative value outweighed any claim of unfair prejudice.

IV.
Defendant argues that the trial court erred by admitting, over objection, testimony by Officer Brajic that he observed two spectators engaged in threatening behavior toward two trial witnesses in the hallway outside the courtroom.
On the second day of trial, the State called to the stand two sisters, Arlena and Vanessa Burse. Both were eyewitnesses to the shooting incident. Arlena's testimony was consistent with her pretrial statements.[4] Vanessa Burse, however, recanted her out-of-court identification of defendant.[5]
The day after the sisters testified, the State called Officer Brajic as a witness. Officer Brajic knew the two sisters. The State elicited the following testimony:
Q. Did you see these same two sisters yesterday?
A. They were here yesterday.
Q. Did you observe anything that attracted your attention as they were leaving the courtroom?
[DEFENSE COUNSEL]: Judge, I'm going to object as to relevancy.
THE COURT: Overruled.
THE WITNESS: There's two individuals sitting in the court here who apparentlyI don't know who they arewere following the witnesses back and forth as they came and left
[DEFENSE COUNSEL]: Oh, Judge, may I
THE WITNESS:and they stared at them.
THE COURT: Reserve your objection, please.
BY [PROSECUTOR]:
Q. And do you see those two individuals sitting in the courtroom right now?
A. Yes, I do.
Q. Can you please point them out and describe them by an article of clothing?
[DEFENSE COUNSEL]: Can I have a continuing objection, Judge, and reserve a motion?
THE COURT: Yes.
Can you point them out?
THE WITNESS: They're two individuals sitting here with white T-shirts, black *306 males, one has braided hair, one has a short balding haircut.
[PROSECUTOR]: For the record, Judge, sitting in the second to the last row in the audience.
THE COURT: Very well.
BY PROSECUTOR:
Q. What did you see them do?
A. They would follow the individuals as they came in and out and they would stand. This individual with the dreads has gold teeth and he would smile at them like this (indicating) with just a stare and he would just dead stare them and they would just keeping looking at the witnesses and they were staring.
I spoke with another officer. We believe this was just an intimidation tactic.
[DEFENSE COUNSEL]: Judge, I'm going to object.
THE COURT: The objection is sustained.
[DEFENSE COUNSEL]: May I come sidebar for the motion?
THE COURT: Please reserve. I know what you're going to do. We're going to continue with the trial. I'll allow you to reserve it.
Go ahead.
[PROSECUTOR]: Thank you very much. Officer.
I have no further questions.
On cross-examination, defense counsel brought out that Officer Brajic was in uniform and that other plainclothes officers were in the vicinity. Defense counsel suggested that it was unlikely the two men in the courtroom would have engaged in such behavior in the presence of police officers.
Defense counsel thereafter moved for a mistrial, contending that the officer's testimony was inadmissible without a showing of a link between the two men in the audience and the defendant. At this juncture, the trial court had sustained the objection but denied the motion for mistrial.
Defense counsel subsequently reiterated the motion for mistrial and the court entertained further argument. Relying on this court's decision in Morgan v. State, 603 So.2d 619 (Fla. 3d DCA 1992), which allowed testimony that a witness was afraid of defendant by way of explaining why the witness had not come forward to identify the defendant, see id. at 620, the court concluded that the testimony had been proper and again denied the motion for mistrial.
In defendant's initial closing argument to the jury,[6] defendant argued:
Then Officer Brajic takes the stand and, lo and behold, allegedly he saw some menacing gestures by two people in this courtroom. What relationship they have to [defendant] Nevil Lopez is a mystery. Probably will remain a mystery, but there is no evidence of what affect that had on these people.
Why? How do I know that? Why do I say that with such a degree of a certainty? Well, all the State had to do is ask them, hey, what effect did that have on you, if any. All they said, all the witnesses said is they just didn't want to get involved. That's all they said. They never said they were threatened. They never said anyone made any threatening gestures.
Some police officer out there, somebody, saw somebody smile at somebody and that is a threatening, menacing gesture. So, they want you to convict on supposition, surmise, conjecture, fear, prejudice and all of those things rather than what your obligation is and that is to determine in the evidence whether or not they've proven their case beyond and to the exclusion of every reasonable doubt.
In response, the State argued:
And you know what, we did bring in evidence of these two gentlemen who had been sitting in court going outside and not to let you know that they have anything to do with the Defendant, you can't consider that because there's no proof that these two guys have anything to do with this Defendant, so don't take that back into the jury room with you, but the reason that we presented that evidence is to show the state *307 of mind of these witnesses; they were afraid.

Maybe not from anything that the Defendant did overtly to them, but here they are, they witness a crime of a man capable of shooting at his wife in a parking lot full of people, capable of putting a gun to someone's head and pulling the trigger with another witness present, capable of shooting up a parking lot and then walking away in plain view of everyone else leaving his truck there. What is in the minds of these witness[es]? If this is what he can do, he can do this to me and that's why they testified in the way they did.
(Emphasis added).
On this appeal, defendant argues that Officer Brajic's testimony should have been excluded, and a mistrial granted, because there was no evidence connecting the defendant to the threatening behavior of the two men in the audience. We disagree.
Evidence of threats or intimidation of a witness can be admitted under two different circumstances.
First, when a defendant personally threatens a witness, the threat is admissible as evidence of defendant's guilt. See Koon v. State, 513 So.2d 1253, 1256 (Fla.1987). That is so because the threat "indicates a desire to evade prosecution and is evidence of consciousness of guilt." Coronado v. State, 654 So.2d 1267, 1269 (Fla. 2d DCA 1995) (citations omitted); see also Jenkins v. State, 697 So.2d 228, 229 (Fla. 4th DCA 1997).
Likewise admissible on the issue of defendant's guilt is a third person's attempt to influence a witness "provided the attempt was with the authority, consent, or knowledge of the defendant." Manuel v. State, 524 So.2d 734, 735 (Fla. 1st DCA 1988); see also State v. Price, 491 So.2d 536 (Fla.1986); Coronado v. State, 654 So.2d at 1269.
Second, even if the defendant is not implicated, "[t]he fact that a witness has been threatened with respect to his testimony may bear on his credibility regardless of who made the threat." Koon v. State, 513 So.2d at 1256; see State v. Price, 491 So.2d 536, 537 (Fla.1986); 24A Fla. Jur.2d Evidence and Witnesses § 1052 (1995). In Koon, evidence of threats was admitted as bearing on the credibility of a witness, even though there was no evidence tying the threats to the defendant. See 513 So.2d at 1255.
Other jurisdictions are in accord with this rule. "`Pursuant to the rule permitting explanations of prior inconsistent statements, it is generally held that evidence of threats to a witness or fear on the part of a witness, in order to explain an inconsistency, is admissible in criminal cases for credibility rehabilitation purposes even if the threats or fear have not been linked to the defendant.' "Brown v. State, 80 Md.App. 187, 560 A.2d 605, 608 (1989) (citation omitted); Washington v. State, 293 Md. 465, 445 A.2d 684, 687 (1982) (collecting cases); see United States v. Stockton, 788 F.2d 210, 218 n. 15 (4th Cir.1986); State v. Walker, 214 Conn. 122, 571 A.2d 686, 690 (1990); Commonwealth v. Martin, 356 Pa.Super. 525, 515 A.2d 18, 20 (1986); Commonwealth v. Bryant, 316 Pa.Super. 46, 462 A.2d 785, 787 (1983); 1 Barbara E. Bergman & Nancy Hollander, Wharton's Criminal Evidence § 4:13, at 328 (15th ed.1997).
Such evidence of threats is, of course, subject to exclusion under section 90.403, Florida Statutes, if the probative value is outweighed by unfair prejudice. See Koon v. State, 513 So.2d at 1256; State v. Price, 491 So.2d at 537.
Where such evidence is allowed, a limiting instruction should be given if requested. See § 90.107(1), Fla. Stat.; 1 Barbara E. Bergman & Nancy Hollander, Wharton's Criminal Evidence § 4.13, at 328.[7]
The decided cases are illustrative. In Koon, the State was allowed to bring out, on *308 cross-examination of a defense witness, the fact that the defense witness felt threatened by Koon's brother and an investigator, even though there was no showing that Koon was responsible for the threats. See 513 So.2d at 1256. In Price, the court acknowledged that in a proper case evidence of third party threats can be admitted to explain why a witness has given inconsistent statements, but held that on the particular facts of Price, the evidence was unduly prejudicial and should not have been elicited by the State on direct examination.[8]See 491 So.2d at 536-37.
Here, Officer Brajic's testimony was admissible with respect to Vanessa Burse's in-trial recantation of her pretrial statements. See Koon, 513 So.2d at 1256; Price, 491 So.2d at 537. The trial court properly rejected the defense argument that such evidence is admissible only if the threats can be tied to the defendant.[9]
Judge Sorondo's concurring opinion addresses the question of what predicate should be laid in order to introduce evidence of third-party threats. Assuming for present purposes that the question of proper predicate is fairly subsumed within defendant's point on appeal, we entirely agree with Judge Sorondo's analysis and disposition of that issue.

V.
Defendant contends that the prosecutor made three improper statements during closing argument. None of the objections advanced on appeal was presented in the first instance to the trial judge. It is true that, after a certain point in the prosecutor's closing argument, the court directed defense counsel to reserve any further objections. It was then incumbent on defense counsel at the conclusion of the prosecution's argument to voice any further objections, and request curative instructions or mistrial as appropriate. Since that was not done, the claims of improper closing argument are not preserved for appellate review. See Kindell v. State, 413 So.2d 1283, 1285 (Fla. 3d DCA 1982), disapproved on other grounds, Reynolds v. State, 452 So.2d 1018, 1019 (Fla. 3d DCA 1984).
Defendant's complaint about one item in the prosecution's opening statement is without merit.

VI.
Defendant appeals the denial of his motion for judgment of acquittal on count one, the charge of attempted first-degree murder of Craig Manor. Defendant's argument is well taken.
Craig Manor testified that as he was hiding on one side of a car in the parking lot, defendant came to the other side of the car. The car windows were rolled up. Defendant pointed the gun at Manor and Manor heard a click. In Manor's pre-trial statement, he *309 indicated that he interpreted the click as defendant's pulling the trigger but that the gun misfired instead of firing. The State thus charged defendant with attempted firstdegree murder of Craig Manor.
At trial, Manor stated that the click he heard could either have been the trigger pull, or could have been the gun tapping on the car window. If the defendant pulled the trigger, then he is guilty of attempted firstdegree murder. If he pointed the gun at Manor and tapped it on the window without pulling the trigger, then defendant is guilty of the lesser included offense of aggravated assault, but not attempted first-degree murder.
The only evidence that defendant pulled the trigger was Manor's statement that he heard a click which he believed to be the trigger being pulled. Because of the concession that the sound could have been caused by the gun tapping on the glass window, we do not think that the evidence is such as to allow the jury to find guilt of the charged crime beyond a reasonable doubt. See Melendez v. State, 498 So.2d 1258, 1261 (Fla. 1986).
Under section 924.34, Florida Statutes, "[w]hen the appellate court determines that the evidence does not prove the offense for which the defendant was found guilty but does establish his guilt of ... a lesser offense necessarily included in the offense charged, the appellate court shall reverse the judgment and direct the trial court to enter judgment for the ... lesser included offense." As recently interpreted in I.T. v. State, 694 So.2d 720 (Fla.1997), the statute authorizes reduction to an appropriate category one necessarily lesser-included offense or category two permissive lesser-included offense. See id. at 724. Here, the jury was instructed on lesser-included offenses including aggravated assault. Accordingly we reverse the conviction on count one, attempted first-degree murder of Craig Manor. We remand for entry of judgment on the lesser-included offense of aggravated assault, and for resentencing.
Defendant also challenges the legal sufficiency of the evidence with respect to count two, the charge of attempted first-degree murder of Ms. Laimes. We find no error and affirm the denial of defendant's motion for judgment of acquittal on that count.

VII.
Defendant challenges his habitual offender sentence on count two, which was imposed for the offense of attempted firstdegree murder with a firearm, a life felony.[10]See §§ 782.04(1), 777.04, 775.087, Fla. Stat. (1993). The date of the crime was August 27, 1995, which was prior to the effective date of the statute allowing habitualization for life felonies. See ch. 95-182, §§ 2, 12, Laws of Fla. (effective Oct. 1, 1995) (codified as § 775.084(4)(a)1, Fla. Stat. (1995)). At the time of defendant's crime, habitualization was not possible for a life felony. See Lamont v. State, 610 So.2d 435, 438 (Fla.1992); Lafleur v. State, 661 So.2d 346, 349 (Fla. 3d DCA 1995). As the State properly concedes, the habitual offender sentence must be reversed on count two and the cause remanded for resentencing.
Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.
GERSTEN, J., concurs.
SORONDO, Judge, specially concurring.
I agree with all but part IV of the majority opinion. By allowing the State to introduce the testimony of Officer Brajic that in his opinion the two unidentified men in the courtroom were acting in such a way as to intimidate the state's two female witnesses, Arlena and Vannessa Burse, the trial court erred. Because I believe this error was harmless I too would affirm.
The defendant misunderstands the law concerning the admissibility of threats made against a witness in a criminal case. He argues that such evidence is only admissible where the threats can be proven to come *310 from the defendant himself or from someone acting on behalf of the defendant. This is incorrect.
The fact that a witness has been threatened or intimidated, or is simply in fear, is admissible into evidence for two purposes. First, if the threats or efforts to intimidate are shown to be attributable to the defendant, either directly or by way of a third party acting on behalf of the defendant, they are admissible as evidence of the defendant's guilt. See Koon v. State, 513 So.2d 1253, 1256 (Fla.1987); Manuel v. State, 524 So.2d 734, 735 (Fla. 1st DCA 1988); see also State v. Price, 491 So.2d 536 (Fla.1986); Coronado v. State, 654 So.2d 1267, 1269 (Fla. 2d DCA 1995). Second, as stated by the majority, "even if the defendant is not implicated, `[t]he fact that a witness has been threatened with respect to his testimony may bear on his credibility regardless of who made the threat.' "See Majority opinion at 307; Koon v. State, 513 So.2d at 1256. In Koon, the Supreme Court of Florida held that such evidence was admissible even in cases where the threats could not be tied to the defendant. Id. at 1255. The common thread running through both permissible purposes for this type of evidence is that the witness in question was, in fact, threatened, intimidated or otherwise in fear. There is no evidence in this case that the defendant or anyone working for him, threatened either Arlena or Vanessa Burse. Accordingly, my analysis focuses on whether these witnesses were threatened or intimidated by someone other than the defendant, so that their testimony may have been affected thereby.
I begin by observing that Arlena's trial testimony was consistent with her pre-trial testimony. There is therefore no reason to believe that she was threatened or intimidated. Because there is no evidence that she altered her testimony in any way, evidence that she may have been threatened was completely irrelevant as to her.
Vanessa's situation is different. She recanted her pre-trial identification of the defendant thereby altering her trial testimony significantly. The state was therefore free to introduce evidence that she had been threatened by third parties to explain to the jury why she was changing her testimony. Koon. The state's problem in this case is that Vanessa was never asked whether she was afraid or whether she had been threatened. All of the cases cited above, as well as those in the majority opinion, have one common, factual characteristic: the witness in question either testified that she was threatened, or a third person testified that the witness had, at some time prior to trial, stated that she had been threatened. Accordingly, there was some evidentiary basis upon which the state could present proof of threats or intimidation.[11] Vanessa was never asked by the prosecutor whether she had been threatened. This was particularly necessary in this case for two reasons. First, the evidence of intimidation was extremely weak. Officer Brajic observed the two unidentified men in the courtroom walking by the women and staring at them as they awaited their turn to testify. At one point one of the men, the one with gold teeth, flashed what the officer opined was an intimidating smile. The officer never heard these men utter intimidating comments nor did he see them make any threatening or intimidating gesture. Second, Arlena, who was present during the time that the allegedly intimidating conduct occurred, was apparently unaffected by it. Although it is entirely possible that one woman was simply more courageous than the other, it is equally possible that the women were unintimidated by the unidentified men's "gold-toothed" smiles, and that Vanessa was sincere in her recantation.
The correct procedure in these circumstances is to conduct a hearing outside the presence of the jury. During this hearing the witnesses should be questioned to establish whether they are afraid, and, if so, whether they have been threatened or intimidated.[12] If the state, or the party seeking to *311 explain the witness's change of testimony, presents evidence of the existence of threats or intimidation, either from the witness's testimony, through the testimony of third parties, or through some type of physical evidence such as tape recordings, then the same testimony can be presented to the jury.[13] If requested, the trial court should instruct the jury that the evidence is being introduced solely for the purpose of explaining the witness's change of testimony. If the party opposing the introduction of such evidence desires, the instruction can go further and advise the jury that they must not speculate as to the source of the threats because such information is unknown.[14]
The evidence at trial established that three weeks after the shooting, Mr. Manor made a positive out-of-court identification of the defendant as the shooter. Four days after the shooting Arlena and Vanessa Burse also made positive identifications. Both detectives testified that, at the time of the photoidentifications, these witnesses showed no hesitation whatsoever. These identifications were admissible as non-hearsay evidence under section 90.801(2)(c), Florida Statutes. The shooter was observed to have driven to the scene of the crime in a white truck which the police subsequently determined was registered to the defendant. Arlena testified in a manner completely consistent with her pre-trial testimony and her trial testimony was extremely incriminating. Finally, I note that although the prosecutor failed to establish the predicate necessary to introduce the evidence in question, during closing argument she argued that the purpose for introducing Officer Brajic's testimony was to explain the witness's change in testimony. She never suggested that the defendant was responsible for the allegedly intimidating conduct of the unknown men, instead she specifically told the jury that, "there's no proof that these guys have anything to do with this defendant, so don't take that back into the jury room with you, ... the reason ... we presented that evidence is to show the state of mind of these witnesses; they were afraid." Although these statements did not cure the error, they certainly mitigated the possibility that the jury might consider the evidence of threats against the witnesses as proof of the defendant's guiltthe only prejudice the defendant complains of in this appeal as concerns this issue.
Given the facts of this case, I am convinced that the trial court's error was harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
NOTES
[1] The firearms examiner testified, however, that seven shell casings were recovered from the parking lot, all of which came from a single weapon.
[2] Since the hearsay exception for excited utterances is applicable, we need not consider whether the physical description would also be admissible as nonhearsay under section 90.801(2)(c), Florida Statutes (1995). See generally Charles W. Ehrhardt, Florida Evidence § 801.9, at 619 & n. 7 (1998 ed.).
[3] We need not reach the State's argument that the impeaching testimony was also independently admissible as substantive evidence. Defendant correctly argues that a sworn statement to a prosecutor does not qualify as nonhearsay under section 90.801(2)(a), Florida Statutes. See Ellis v. State, 622 So.2d 991, 997-98 (Fla.1993); State v. Delgado-Santos, 497 So.2d 1199 (Fla.1986). However, Manor's sworn statement reiterating his identification of defendant in the photo lineup was independently admissible as a nonhearsay statement of identification under section 90.801(2)(c), Florida Statutes. Further, although we need not decide the point, Manor's testimony near the conclusion of redirect appears to endorse the correctness of his earlier sworn statement.

The trial court took the view that the sworn statement was not hearsay because it was "[c]onsistent with the declarant's testimony and ... offered to rebut an express or implied charge against the declarant of improper influence, motive, or recent fabrication ...." § 90.801(2)(b), Fla. Stat. (1995). The court thus took the view that the sworn statement in its entirety was nonhearsay. However, we are unable to see that the defense made an express or implied charge against Manor of improper influence, motive, or recent fabrication.
[4] Arlena was talking with Ms. Laimes when defendant drove up in the white truck. Ms. Laimes explained that defendant was her husband. Arlena saw the ensuing quarrel and gunfire. She identified defendant from a photo lineup and reiterated the photo identification at trial. For reasons not explained, Arlena was not asked to make an in-court identification of defendant.
[5] Vanessa Burse had been inside the apartment when the gunfire started and called 911. From the apartment window, she saw defendant brandishing his weapon in the parking lot. A day after the photo lineup was shown to Arlena Burse, Vanessa Burse looked at the same photo lineup and identified defendant. At trial, however, Vanessa Burse stated that she was not sure if the defendant was the man she had seen in the parking lot. She recanted her photo identification of defendant, stating that she picked photo number two (defendant's photo) only because her sister Arlena told her to pick the oldest man. She said that otherwise she would have picked photo number six.
[6] Defendant presented no evidence at trial.
[7] The Maryland high court has said, "The degree of prejudice caused by the evidence of threats is certainly less when the threats are not connected with the accused than when they are linked to him.... [A]ny unfair prejudice to the accused in this situation can be cured by his requesting a cautionary jury instruction, ... telling the jury to consider the evidence only for the purpose of assessing the witness's credibility and not as evidence of guilt." Washington v. State, 445 A.2d at 687.
[8] In Price, a witness had testified untruthfully at defendant's first trial because of third party threats. See 491 So.2d at 536. The first trial ended in a mistrial. At the retrial, the witness testified truthfully. Over objection, the State brought out the fact of the inconsistent statement at the first trial, and the earlier threats. While the State is in general allowed the use of anticipatory rehabilitation on direct examination, here the anticipatory rehabilitation brought out not only the earlier untruthful statement but also the reason for it: third party threats. On these facts, the court held that the evidence of threats was unfairly prejudicial and should have been excluded. See id. at 537.

In other words, once the witness testified in the second trial, the defense might very well choose not to cross-examine regarding the prior inconsistent statement, because if the defense did so, then that would open the door for the State to introduce evidence of the third-party threats. See Morgan v. State, 603 So.2d at 620. In that circumstance, the State should not have been the first to raise the issue.
Similar to Price is Jackson v. State, 575 So.2d 181 (Fla.1991), where the State elicited evidence of third party threats by defendant's family when the witness testified before the grand jury. There was no apparent reason for bringing out the evidence of threats, and the threats were not tied to defendant. See id. at 187-88. On the facts of the case, however, the error was harmless. See id. at 189.
[9] Although the trial court had sustained the objection to Officer Brajic's testimony before the jury, the defendant's motion for mistrial was revisited on several subsequent occasions. Prior to closing argument, the trial court ultimately concluded that Officer Brajic's testimony was, in fact, admissible. That being so, both parties were then free to raise the issue in closing argument.
[10] Defendant's identical challenge to the sentence on count one is moot, since we have reversed the conviction on that count.
[11] For example, in this case, on direct-examination the state asked witness Manor if he was afraid. Manor responded that he was not. The state then called a detective who testified that Manor had specifically stated before trial that he was afraid and that he would change his testimony at trial. See Majority opinion at 4-8.
[12] It is possible that a witness in a criminal trial can be afraid of the legal process even in the absence of a threat. Such fear, real or imagined, can affect the witness's testimony. Both the state and the defense should be allowed to explore such fear if it will serve to explain a witness's change in testimony.
[13] The trial court must determine whether the party seeking to introduce such evidence has established the necessary predicate. This determination is no different than that necessary for the introduction of any evidence. In such a situation, if the state is seeking to introduce evidence of threats as proof of the defendant's guilt, it would have to establish the existence of evidence that the witnesses were threatened by the defendant, or by someone acting on his behalf. If, as in this case, the state is offering the evidence to explain a witness's recantation or change in testimony, it would have to establish only that the witness was threatened or intimidated, or is, for some other reason, in fear.
[14] Clearly, if the identity of the person threatening the witness is known, and he or she can be tied to the defendant, then the threats can be introduced to prove the defendant's guilt and no limiting instruction would be necessary. Coronado, 654 So.2d at 1269.