PER CURIAM.
Camilo Marmol (defendant), appeals from a final judgment of conviction and sentence for the crimes of attempted second degree murder and possession of a firearm during the commission of a felony.
In his first claim, defendant argues that the trial court erred by allowing the prosecutor to ask the victim whether he had been threatened in any way and whether anyone had offered him “any money or other financial consideration to testify falsely ... in court,” when there was no factual basis for the question. The victim *765 responded to the prosecutor’s question by-saying that he had never been threatened, offered any money to testify falsely, or seen the defendant again before the day of trial.
We agree that the questions at issue should not have been asked in the presence of the jury. In Lopez v. State, 716 So.2d 301 (Fla. 3d DCA 1998), the concurring opinion discussed the proper predicate for the introduction of this type of evidence:
The correct procedure in these circumstances is to conduct a hearing outside the presence of the jury. During this hearing the witnesses should be questioned to establish whether they are afraid, and, if so, whether they have been threatened or intimidated. If the state, or the party seeking to explain the witness’s change of testimony, presents evidence of the existence of threats or intimidation, either from the witness’s testimony, through the testimony of third parties, or through some type of physical evidence such as tape recordings, then the same testimony can be presented to the jury.
Id. at 310-11 (Sorondo, J., concur-ringXfootnotes omitted).[1] In Madison v. State, 726 So.2d 835, 837 (Fla. 4th DCA 1999), the Fourth District Court of Appeal agreed that “because ... evidence of efforts to bribe or threaten witnesses, when erroneously admitted, creates a high risk that the error will require a new trial,” it should first be presented to the trial judge outside the presence of the jury. Had this been done in the present case, the jury would never have heard these questions which suggest that the witness was somehow improperly influenced to change his testimony when there was no evidence that such was the case.
Having concluded that it was error to allow these questions to be asked in the presence of the jury, we now consider whether the error was harmful. The state presented four eye witnesses. The victim testified that the actual shooting incident began when he “went at” the defendant with a pair of freon gas tanks. His version of the shooting was significantly impeached by his own prior statements wherein he told police that he picked up the gas tanks to defend himself. Two of the witnesses were friends of both the defendant and the victim. These witnesses also said that the victim “went at” the defendant with the gas tanks but that he dropped them when the defendant fired his first shot. They further testified that the defendant continued to shoot at the victim as the latter was running away. The third eye-witness was a woman who lived across the street from where the shooting took place. She testified that when she heard the shooting she observed the defendant firing his gun at the victim from a distance of twenty feet as the victim ran away. The physical evidence demonstrated that the victim had been shot from behind, sustaining bullet wounds to his buttocks, thigh and forearm. Finally, after the shooting, the defendant fled the scene.
Regardless of who may have been the initial aggressor, it is absolutely clear that immediately after the confrontation began the victim took no action against the defendant who was in possession of the superior weapon.[2] The defendant was no longer in danger. Section 776.012, Florida Statutes (1997), defines the justifiable use of deadly *766 force in defense of one’s own person as follows:
[A] person is justified in the use of deadly force only if he or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself.
The facts in this case completely refute the defendant’s defense of self-defense. The eye witness testimony, as well as the defendant’s own post-arrest statement, establish that the victim was repeatedly shot from behind as he ran away from the defendant. Under these circumstances the defendant could not have reasonably believed that he was in “imminent danger of death or great bodily harm,” from an unarmed man who was running away. We are therefore convinced that the error in question was harmless beyond any reasonable doubt. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
The state concedes that Defendant’s second claim of error is meritorious. Having been convicted of attempted second degree murder with a firearm, the conviction for possession of a firearm during the commission of the same felony violates the double jeopardy clauses of Article I, Section 9 of the Constitution of the State of Florida and the Fifth Amendment of the United States Constitution. See Cleveland v. State, 587 So.2d 1145 (Fla.1991).
We affirm the defendant’s conviction and sentence on the charge of attempted second degree murder with a firearm. We reverse his conviction on the second charge and remand with directions to discharge defendant on that count of the Information.

. Although the concurring opinion does not represent the holding of the majority of the Court, we note that the majority did not disagree with this analysis:
[The] concurring opinion addresses the question of what predicate should be laid in order to introduce evidence of third-party threats. Assuming for present purposes that the question of proper predicate is fairly subsumed within defendant’s point on appeal, we entirely agree with [the concurring opinion’s] analysis and disposition of that issue.
Lopez, 716 So.2d at 308.

. For purposes of this analysis, we accept without conceding, that under the facts of this case, freon gas tanks can constitute "weapons.”