CONNER, J.
Patrick Melehan appeals his conviction and sentence for manslaughter and burglary with an assault or battery after a trial by jury. He argues the trial court erred in four ways: (1) failing to grant a mistrial after improperly admitting deposition testimony of an eyewitness, (2) allowing improper testimony that the eyewitness was threatened by Melehan’s friends, (3) failing to grant a mistrial after an improper comment during opening statement by the State and after the arresting officer testified before the jury that Melehan did not make any statements when arrested, and (4) failing to grant a judgment of acquittal. The evidence presented during the trial presents a highly unusual factual scenario for appellate review. The State charged Melehan with the second degree murder of the victim (“C.L.”), but the jury found him guilty of manslaughter. C.L. died as the result of a thin, L-shaped rod, approximately five feet long, being impaled in his head while driving his truck. No witnesses testified as to how the rod came to be impaled into C.L.’s head. No witness testified seeing the rod before it was sticking out of C.L.’s head. No witness could explain where the rod came from.
*1121 The trial judge denied motions for mistrial on two different occasions when the State elicited inadmissible evidence. Instead of granting a mistrial, the trial judge gave curative instructions both times. The grounds asserted for mistrial were renewed in a post-trial motion for new trial. Having considered carefully the peculiar circumstances of this case, we determine that the trial judge abused her discretion in denying the motions for mistrial. Thus, we reverse and remand the case for a new trial.

Discussion of the Facts and the Trial

The victim (“C.L.”) drove his pickup truck to a residence in Jupiter to visit a friend. While driving to his friend’s house, C.L. passed in front of a house where Melehan was living with others. Melehan had several friends at his house that day. C.L. had ongoing problems with one of Meleharis friends, who was not at the house at that time. As C.L. drove past Meleharis house, a verbal confrontation arose between C.L. and some of Meleharis friends who were in the front yard. Mele-han was inside the house the first time C.L. drove past the house. C.L. made threats to shoot or kill some of them. C.L. then drove away from the house, but returned about fifteen minutes later and slowly drove by in front of the house again.
Having learned of the confrontation when C.L. passed by the first time, Mele-han was outside in the driveway of the house as C.L. approached the second time. Melehan was angry about C.L.’s confrontational behavior. Melehan and two of his friends approached C.L.’s truck, and a verbal confrontation between the three of them and C.L. ensued. C.L. started to drive away a second time, at which time Melehan and one of the other two friends ran to catch up to the truck. Melehan was seen striking the truck with his fist and moving toward the driver’s side door. Me-lehan was also seen jumping onto the running board on the driver’s side of the truck, reaching into the window, and punching at C.L. When Melehan jumped off, the truck began to drive in a circular motion through an intersection, at one point going through a yard, and eventually rolling to a stop straddling the edge of a street.[1] After the truck stopped, C.L. was seen with a metal rod impaled into his head.
There was evidence the rod was approximately five feet long and 3/10 of an inch in diameter.[2] The evidence showed the rod was bent in an “L” shape, with one leg being slightly longer than the other. The eyewitnesses who first saw the rod in C.L.’s head described that C.L. sat slumped in the driver’s seat with the truck running and the rod was protruding out of the driver’s window. The front windshield of the truck had to be removed by emergency responders, and the rod had to be cut by them before the driver’s door could be opened to remove C.L. from the vehicle.
The rod was blunt on both ends. One end went through the top of C.L.’s skull near the hair line and exited the back of the skull, but did not puncture through the skin on the back of the head. The defense expert testified the rod was bent before it entered C.L.’s skull. The defense expert also opined that given the force necessary to bend the rod, the composition of the steel, and the uniform smoothness of the curve in the rod, the rod was bent using a tool and not using one’s knee and two hands.
No witness testimony was presented at trial as to how C.L. came to be impaled by *1122 the metal rod.[3] Although there was DNA evidence obtained from the rod, the DNA evidence did not link Melehan to the rod. C.L. died from the injury in the hospital shortly after the incident. He was not conscious at the scene and never regained consciousness due to massive brain injury.
Melehan was arrested two days after the incident and charged with second degree murder with a weapon and burglary with an assault or battery. Prior to his arrest, Melehan knew that the police wanted him to come in for questioning; however, he did not follow through with arrangements made to speak to the police.
Prior to trial, counsel for Melehan took a discovery deposition of A.S. A.S. was not only one of Melehan’s roommates at the time, but also an eyewitness to the incident. A.S. testified in the deposition that he saw Melehan pick up “something off the ground and in a javelin form throw it towards the car,” referring to C.L.’s truck. After A.S.’s deposition, but before trial, A.S. told the prosecutor he would invoke the Fifth Amendment if called to testify because he was concerned about being charged with perjury if he repeated his deposition testimony at trial.
At trial, a proffer of A.S.’s testimony was made by the State. During the proffer, A.S. did not invoke his Fifth Amendment privilege. Instead, he consistently and repeatedly stated he did not remember any details of the events surrounding the incident except that he saw Melehan slap C.L.’s truck as he was running beside it. When specifically asked if he saw Me-lehan throw an object toward the truck, A.S. testified that he didn’t remember. The State then sought leave to call A.S. to testify before the jury and use his deposition testimony if he claimed before the jury that he could not remember the event.
The defense anticipated A.S. would invoke the Fifth Amendment and the State would attempt to introduce his deposition testimony. Melehan’s trial counsel filed a memorandum of law in opposition to the use of A.S.’s testimony for substantive purposes.[4] Trial counsel argued the deposition testimony could not be used for impeachment because A.S. was claiming a lack of memory; thus, there was no inconsistent statement. Trial counsel also argued that A.S.’s deposition testimony could not be used for substantive purposes because such use would violate Melehan’s right of confrontation, citing State v. Lopez, 974 So.2d 340 (Fla.2008) and Leighty v. State, 981 So.2d 484 (Fla. 4th DCA 2008). Trial counsel further argued that A.S.’s claim of lack of memory deprived Melehan of the opportunity to cross-examine A.S. in front of the jury on the statement that he saw Melehan pick something up and throw it at C.L.’s truck.
In ruling on the proffer, the trial judge allowed evidence of the deposition testimony to be presented to the jury, citing section 90.804(2)(a), Florida Statutes (2009), as authority.[5] In front of the jury, A.S. *1123 again repeated that he did not remember details of the incident. The State asked if he recalled testifying in deposition that he saw Melehan pick something up and throw it like a javelin. A.S. acknowledged he made the statement in deposition, but claimed he did not recall the incident. Continuing to claim a lack of memory at trial, A.S. also admitted in front of the jury, under questioning by the State, that he previously testified in deposition that he saw Melehan punching C.L. through the driver’s window, and that Melehan admitted to him he knew law enforcement was looking for him after the incident. A.S. also testified, over Melehan’s objection, that he had been threatened prior to the trial by people who were now friends of Melehan and who had been former friends of A.S.
Prior to the conclusion of trial, Melehan filed a written motion for mistrial and a motion to strike A.S.’s deposition testimony in the alternative, arguing that A.S.’s deposition testimony was inadmissible for substantive purposes and again contending that the admission of the deposition testimony violated Melehan’s right of confrontation. The trial court acknowledged that there was precedent to support the defense argument that former testimony from a deposition could not be used for substantive purposes; however, none of those cases dealt with a witness who appeared before the jury. Likewise, regarding the Confrontation Clause argument, none of the case law cited by the defense involved a situation in which the witness was present at trial and subject to cross-examination. The trial court reasoned that since A.S. appeared before the jury, he was subject to cross-examination and the Confrontation Clause argument had no merit. Nonetheless, the trial court denied the motion for mistrial, but granted the motion to strike.
The trial court gave very specific instructions to the jury to disregard A.S.’s deposition testimony: 1) that he saw Mele-han run to the driver’s side door of the truck and hit C.L., 2) that he saw Melehan throw an object at the truck, and 3) that Melehan told him he knew the police were looking for him. The problem is that striking of the deposition testimony and giving a curative instruction to disregard the testimony came two days after A.S. testified.
During opening statements, the prosecutor told the jury “you will hear that arrangements were made for [Melehan] to come in and speak to the police but he never followed through.” Melehan moved for a mistrial, arguing this was a comment on his right to remain silent, but the motion was denied.
During direct examination of the detective who arrested Melehan, the detective explained that the arrest occurred on the side of a road. The following exchange occurred:
Q. Okay. Did you start asking Mr. Me-lehan any questions?
A. No.
Q. And in front of you did Mr. Melehan make any statements?
A. No.
No objection was made at that point, but shortly thereafter the following exchange occurred:
Q. What did you do?
A. We had eventually had to leave [the police station] to go to Wal-Mart to purchase a replacement set of *1124 clothes for Mr. Melehan so we could take the clothes that he was wearing for our investigation.
Q. Was that done?
A. Yes, it was.
Q. What did you do next?
A. Upon completion of everything in the holding area and after the clothes?
Q. Yes.
A. I left. The reason an interview was not done of Mr. Melehan at that time and Detective [_] and I—
At that point the defense objected, and there was a bench conference. Trial counsel moved for a mistrial on the basis that the State elicited testimony that was a direct comment on Melehan’s right to remain silent. The argument included not only the comment about “an interview,” but also the comment about “any statements” at the scene of the arrest. The State argued it was trying to demonstrate that the officers made a decision to not ask Melehan any questions at that point in the investigation. The trial judge observed the testimony about “an interview” appeared to be in the context of showing how the police conducted its investigation, and was not objectionable. However, the testimony about “any statements” at the arrest scene could readily be construed as a comment on Melehan’s right to remain silent. The trial judge denied the motion for mistrial, but gave a curative instruction reminding the jury that a defendant has an absolute right to remain silent and a negative inference should not be drawn from the right to remain silent.
After the State rested, Melehan moved for a judgment of acquittal as to the second degree murder charge, arguing that no eyewitness testified as to how the metal rod became impaled into C.L.’s head and there was insufficient evidence to convict Melehan beyond a reasonable doubt.[6] The motion was denied.
AS.’s Deposition Testimony
The trial judge initially deemed A.S.’s deposition testimony to be admissible as former testimony as allowed by section 90.804(2)(a), Florida Statutes (2009). Upon reconsideration after further argument and a memorandum of law submitted with a written motion to strike, the trial judge recognized A.S.’s deposition testimony was not admissible and granted the motion to strike. Although the trial judge did not explicitly explain the reason for her change of position, we assume she recognized that Melehan correctly argued that because the discovery deposition testimony of A.S. was not a deposition to perpetuate testimony taken in accordance with Florida Rule of Criminal Procedure 3.190(i), it was not admissible as substantive evidence.
Beginning with State v. James, 402 So.2d 1169 (Fla.1981), later followed by Rodriguez v. State, 609 So.2d 493 (Fla.1992), and continuing with State v. Lopez, 974 So.2d 340, 350 (Fla.2008), our supreme court has consistently held that deposition testimony which does not comply with the requirements of Florida Rule of Criminal Procedure 3.190(i) cannot be used as substantive evidence. As stated by the supreme court:
Rule of Criminal Procedure 3.220(h), as adopted by this Court, allows discovery depositions to be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness but makes no provision for their use as substantive evidence. If it had been our intent to allow such use, the rule would so state. Rather, Rule of *1125 Criminal Procedure 3.190(j) [now 3.190(i) ] was enacted to assure that both parties have an opportunity and motive to fully develop deposition testimony before it can be used as substantive evidence in a criminal case.
The holding in State v. James that discovery depositions are not admissible as substantive evidence absent compliance with Rule 3.190© was in no way modified by the adoption of section 90.804(2)(a). In fact, the necessity of meeting the procedural requirements for perpetuating testimony before a deposition is admissible as substantive evidence is recognized in section 90.804(2)(a) by the express requirement that the deposition must be “taken in compliance with law.”
Rodriguez, 609 So.2d at 498-99 (citations omitted) (footnote omitted).
The State led the trial court into error by admitting evidence of A.S.’s deposition testimony as former testimony. Upon the renewed request by the defense for a mistrial or in the alternative to strike the testimony, the trial judge attempted to correct the error by striking the testimony. However, on appeal, Melehan asserts the trial court erred by denying the motion for mistrial.
We review the trial court’s ruling on the motion for mistrial for an abuse of discretion. Salazar v. State, 991 So.2d 364 (Fla.2008). As explained in Salazar:
“A motion for a mistrial should only be granted when an error is so prejudicial as to vitiate the entire trial.” England [v. State], 940 So.2d at 401-02; see Hamilton v. State, 703 So.2d 1038, 1041 (Fla.1997) (“A mistrial is appropriate only where the error is so prejudicial as to vitiate the entire trial.”). Under the abuse of discretion standard, a trial court’s ruling will be upheld unless the “judicial action is arbitrary, fanciful, or unreasonable.... [Discretion is abused only where no reasonable [person] would take the view adopted by the trial court.” Trease v. State, 768 So.2d 1050, 1053 n. 2 (Fla.2000) (second alteration in original) (quoting Huff v. State, 569 So.2d 1247, 1249 (Fla.1990)).
Id. at 372. We also note “[i]n this State the rule has been long established and continuously adhered to that the power to declare a mistrial and discharge the jury should be exercised with great care and caution and should be done only in cases of absolute necessity.” Salvatore v. State, 366 So.2d 745, 750 (Fla.1978).
In most instances, giving a curative instruction when erroneous information is given to a jury will obviate the necessity of a mistrial. Graham v. State, 479 So.2d 824, 825 (Fla. 2d DCA 1985). However, there are times when a curative instruction is not sufficient to “unring the bell,” and a new trial is required. Id. In this case, the two-day delay in giving the curative instruction for the jury to disregard A.S.’s deposition testimony vitiated Melehan’s ability to have a fair trial.
Two cases are instructive on the prejudicial effect of the delay in instructing the jury to ignore A.S.’s deposition testimony. In Tumblin v. State, 29 So.3d 1093 (Fla.2010), the State elicited testimony from a detective that Tumblin’s codefendant gave a confession identifying Tumblin as the shooter in a murder prosecution. The victim was shot in his shop before it opened, and no one else was in the shop except the victim, the defendant and his codefendant. In front of the jury, the detective testified that when he related the codefendant’s confession to fellow investigators, he told them he believed the codefendant would tell them the truth when they spoke to him. The defense immediately objected and moved for a mistrial.
The trial court sustained the objection and struck the comment. However, the *1126 trial court took the motion for mistrial under advisement over the weekend, and on the following Monday denied the motion and elected to give a curative instruction. The curative instruction made no specific reference to the improper testimony. The trial court simply instructed, “You are hereby instructed that the believability or credibility of all witnesses testifying in this case is within the exclusive province of the jury. Please disregard any suggestion to the contrary.” Tumblin, 29 So.3d at 1102 n. 7.
The supreme court commented in a footnote about the delay over a weekend before giving a curative instruction. The court found the curative measures did not erase the taint of the testimony and it was an abuse of discretion to deny the motion for mistrial. Id. The court grounded its conclusion that it was error to deny the motion for mistrial in part on the fact that codefendant gave the only eyewitness testimony that Tumblin was the shooter.
In Shabazz v. State, 928 So.2d 1267 (Fla. 4th DCA 2006), this court dealt with a second degree murder prosecution in which the eyewitness testimony presented conflicting evidence as to whether the defendant killed the victim in self-defense when a drug deal went bad. When the defendant was cross-examined, the State erred by asking the defendant to admit that his testimony at trial was the first time he told anyone his version of the events. Defense counsel immediately objected and moved for a mistrial, contending the prosecutor made an impermissible comment on Shabazz’s right to remain silent. The trial court overruled the objection and denied the motion for mistrial, but later offered to give a curative instruction. Shabazz declined the offer for a curative instruction. On appeal, the State contended Shabazz waived any argument that the denial of the motion for mistrial was error because the defense declined the offer of a curative instruction. We held the error was not waived and concluded the delay in offering to give a curative instruction diminished the sufficiency of the curative instruction.
As we determined in Shabazz, the delay in striking A.S.’s deposition testimony and giving a curative instruction substantially diminished the efficacy of the instruction. This is particularly true in light of the fact that there was no eyewitness testimony to explain how the rod became impaled into C.L.’s head. Similar to the situation in Tumblin, A.S.’s deposition testimony was the only eyewitness evidence that implicated Melehan (and no others) as throwing something like a javelin.[7] We conclude, on the facts of this case, that the denial of the motion for mistrial regarding A.S.’s deposition testimony was an abuse of discretion by the trial court.

Comments on Right to Remain Silent

“It is clear that comments on silence are high risk errors.... ” State v. DiGuilio, 491 So.2d 1129, 1136 (Fla.1986). Comments on silence create a substantial likelihood they will vitiate the defendant’s right to a fair trial. Id. A ruling on a motion for mistrial based on a testimonial comment on the defendant’s silence must be evaluated under an abuse of discretion standard of review. Espute v. State, 85 So.3d 532, 533 (Fla. 4th DCA 2012) (en banc).
We do not construe the prosecutor’s statement in opening that Melehan failed to follow through with arrangements to come in for questioning by the police to be a comment on his right to remain silent. His failure to come in was not portrayed in any context of Melehan avoiding custody *1127 or as evidence to support an inference of consciousness of guilt.
However, the testimony of the arresting officer that Melehan made no statement when arrested is a completely different matter. As the trial judge noted in ruling on the objection, it is immediately obvious that such testimony could be construed as a comment on his right to remain silent. Although it may be appropriate to ask an arresting officer if he or she decided to conduct an interview immediately after making an arrest to give information about how the investigation unfolded, here the State went further and specifically asked if Melehan made any statements. Eliciting such evidence violated Melehan’s Fifth Amendment right.

Threats to A.S.

Melehan argues the trial court improperly allowed testimony that A.S. had been threatened by friends of Melehan prior to testifying in front of the jury. Melehan further argues the State elicited such testimony to prove he committed the crime. However, the State argues the testimony was elicited to explain to the jury why A.S. remembered certain portions of the incident while testifying before the jury, but claimed a lack of memory on critical questions concerning Melehan’s involvement in the incident that he testified about in deposition.
The jury heard the following exchange during direct examination by the State:
Q. Okay. Do you remember, sir, telling Mr. Richardson, Mr. Weiss and myself that since this incident occurred, that you have been threatened?
A. Yes.
Q. Excuse me?
A. Yes.
Q. And these threats were from friends of Mr. Melehan; is that true?
A. I don’t remember.
Q. Do you know who was making these threats?
A. I — I guess.
Q. Yes. Do you remember who was making these threats?
A. Friends that were friends of mine and friends of Melehan’s.
Q. Who were these people?
A. Various different people.
Q. Who were those people, Mr. [S]?
A. I don’t remember. I don’t remember.
Q. Were they friends of Mr. [C.L.]?
A. I don’t remember.
We agree that such testimony does not show that Melehan was involved in generating the threats. Melehan contends that A.S.’s testimony clearly implicates Mele-han as being involved in making the threats. We do not agree such an implication is clear, particularly in view of the response, “friends that were friends of mine and friends of Melehan’s.” Moreover, it is quite conceivable that friends of Melehan could be posing threats against A.S. without Melehan being involved with or having requested such intimidation tactics.
In Madison v. State, 726 So.2d 835, 836 (Fla. 4th DCA 1999), we stated, “[e]vi-dence of threats made against witnesses is generally inadmissible unless the state can establish that the threats are attributable to the defendant.” We cited Koon v. State, 513 So.2d 1253 (Fla.1987) as authority for our statement. In Koon, the court said, “[i]t has been held that evidence of threats made against witnesses is inadmissible to prove guilt unless the threats are shown to be attributable to the defendant.” Id. at 1256 (emphasis added). However, *1128 the court then went on to say, “[t]he fact that a witness has been threatened with respect to his testimony may bear on his credibility regardless of who made the threat.” In Koon, our supreme court upheld the use of testimony that a third person made threats to a witness because the evidence was not being used solely to cast the defendant in a bad light.
In Lopez v. State, 716 So.2d 301 (Fla. 3d DCA 1998), the Third District, relying on Koon, agreed with other out-of-state jurisdictions in regards to the rule permitting explanations of prior inconsistent statements: “it is generally held that evidence of threats to a witness or fear on the part of a witness, in order to explain an inconsistency, is admissible in criminal cases for credibility rehabilitation purposes even if the threats or fear have not been linked to the defendant.” Lopez, 716 So.2d at 307 (citations omitted). In Lopez the evidence of threats against a witness was held admissible to explain the witness’s in-trial recantation of pre-trial statements. If it is appropriate to allow evidence of third-party threats to explain why a witness has recanted a pre-trial statement, we see no reason such evidence is inadmissible to explain why a witness has a partial lack of memory.[8]
In this case, we are satisfied the State introduced testimony that A.S. was threatened by third persons to explain his claimed lapse of memory, rather than to attempt to cast Melehan in a bad light or to prove Melehan had guilty knowledge. Therefore, we find no error committed by the trial court by the admission of such evidence based on the way the evidence unfolded before the jury. We offer no opinion as to whether such evidence will be admissible on retrial because the admissibility of such evidence depends on what issues of credibility may be raised about A.S.’s testimony if he is called as a witness.

Denial of Motion for Judgment of Acquittal

As we have said repeatedly, there was no witness who testified at trial as to how a metal rod came to be impaled into C.L.’s head. Melehan argues that the circumstantial evidence on that issue was insufficient to prove that he is the one who caused the rod to be impaled in C.L.’s head and negate the possibility that someone else did it or it was an accident. Thus, he contends on appeal that the trial court erred by not granting his motion for judgment of acquittal during trial and post-trial on the charge of manslaughter. We disagree.
“In moving for a judgment of acquittal, a defendant admits the facts in evidence and every conclusion favorable to the adverse party that may be fairly and reasonably inferred from the evidence.” Richards v. State, 37 So.3d 925, 926 (Fla. 4th DCA 2010) (citing Pagan v. State, 830 So.2d 792, 803 (Fla.2002)). In a circumstantial evidence case, the State must present evidence from which the jury can exclude every reasonable hypothesis except that of guilt. Orme v. State, 677 So.2d 258, 262 (Fla.1996). The State must present evidence that conflicts with the defendant’s hypothesis of innocence, but the State is not required to completely disprove it. See State v. Law, 559 So.2d 187 (Fla.1989).
In this case, the State presented evidence from several witnesses that Melehan was the only person to reach into the driver’s side window and strike C.L. several times. There was evidence Melehan was angry at C.L. before he drove past his *1129 house a second time and that Melehan made comments that he was going to “get him,” referring to C.L. The State also presented testimony of witnesses that shortly after Melehan jumped off the running board by the driver’s window, the truck proceeded in a circular fashion and rolled to a stop, and the metal rod was discovered impaled in C.L.’s head. Mele-han was the last person to have any contact with C.L. before he was observed with a rod impaled in his head. There was evidence that Melehan fled the scene and later made statements that he had been in a fight, that he did something “real bad,” that he tried to punch C.L. through the truck window, and that he thought he killed somebody. There was sufficient evidence to allow the case to go to the jury on the charge of second degree murder, as well as manslaughter. Thus, we do not find any error in the denial of the motion for judgment of acquittal.

The Burglary Conviction

We have determined the trial court erred in not granting a motion for mistrial as to the charge resulting in a conviction for manslaughter based on the erroneous admission of A.S.’s deposition testimony and an ineffectual curative instruction. As to the charge of burglary, the analysis is different. Although it is true that it was error to allow evidence that A.S. testified in deposition that he saw Melehan punching C.L. through the driver’s window, there were multiple eyewitnesses who testified to the same thing. Thus, the erroneous admission of A.S.’s deposition testimony followed by an ineffectual curative instruction did not vitiate Melehan’s ability to have a fair trial as to the burglary charge. However, if the trial court had ruled correctly on the motions for mistrial during the trial, Melehan would be entitled to a new trial on both charges. Thus, we reverse for a new trial on the charge of burglary with an assault or battery, as well as the charge of manslaughter.

Reversed and remanded for a new trial.

MAY, C.J., and TUTER, JACK B., JR., Associate Judge, concur.

. The evidence was conflicting as to how many circles the truck made before coming to a stop.

. The defense expert testified the rod was an unusual size rebar. He testified most rebar comes in a minimum size of 3/8 inch, which is .375 inches.

.At trial, the State called a total of thirty-three witnesses, several of whom were eyewitnesses to the events. Some of the eyewitnesses were friends of Melehan who were present during the incident. Other eyewitnesses were neighbors or persons driving through the neighborhood at the time who did not know either Melehan or C.L. Those eyewitnesses who saw the metal rod impaled in C.L.'s head offered no testimony as to how the rod became impaled in his head, and none of them saw the rod until after C.L.'s vehicle came to a complete stop.

. Neither the State nor the defense anticipated A.S. would claim a lack of memory.

. Section 90.804(2)(a), Florida Statutes provides:
HEARSAY EXCEPTIONS. — The following are not excluded under s. 90.802, provided that the declarant is unavailable as a witness:
*1123 (a) Former Testimony. — Testimony given as a witness ... in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

. The defence made no argument for acquittal as to the burglary charge, recognizing there were no legally sufficient grounds for doing so.

. We note in this case the trial judge gave a much more testimony-specific and detailed curative instruction than the trial judge in Tumblin.

. In Lopez, the court outlined a procedure to be followed in admitting evidence regarding threats to a witness by a third-party. No issue was made in this appeal about the procedure used to introduce the testimony of threats to A.S.