770 So.2d 655 (2000)
Kenneth GRANT, Petitioner,
v.
STATE of Florida, Respondent.
No. SC99-164.
Supreme Court of Florida.
November 2, 2000.
*656 James Marion Moorman, Public Defender, and Douglas S. Connor, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida, for Petitioner.
Robert A. Butterworth, Attorney General, Robert J. Krauss, Senior Assistant Attorney General, Chief of Criminal Law, and Ronald Napolitano, Assistant Attorney General, Tampa, Florida, for Respondent.
LEWIS, J.
We have for review Grant v. State, 745 So.2d 519 (Fla. 2d DCA 1999), which expressly and directly conflicts with Adams v. State, 750 So.2d 659, 662 (Fla. 4th DCA 1999) (reasoning that the "imposition of a sentence under both [the prison releasee reoffender and the habitual felony offender] statutes constitutes double jeopardy and is illegal") and Thomas v. State, 745 So.2d 1119 (Fla. 5th DCA 1999) (holding that such concurrent sentences violate double jeopardy).[1] We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

MATERIAL FACTS
Kenneth Grant pled "no contest" to a charge of sexual battery (reserving the right to seek appellate review of certain *657 constitutional issues which he had presented) and received concurrent sentences as a habitual felony offender (pursuant to section 775.084, Fla. Stat. (1997)) and a prison releasee reoffender (pursuant to section 775.082(8), Florida Statutes (1997)(the "Act")). The final judgment and sentence reflects that Grant received one sentence of fifteen years as a habitual felony offender ("HFO"), with a mandatory minimum term of fifteen years as a prison releasee reoffender ("PRR"). Before both the trial court and the lower appellate court, Grant asserted that the Act was unconstitutional.[2] Some of these issues[3] have already been resolved by this Court's opinion in State v. Cotton, 769 So.2d 345 (Fla.2000); those issues will not be revisited here. The Second District rejected all of Grant's challenges.

SINGLE SUBJECT
Grant first argues that the Act embraces multiple subjects in violation of the single subject requirement of article III, section 6, Florida Constitution (providing that every law "shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title"). Pursuant to this requirement, there must be "a logical or natural connection" between the various portions of a legislative enactment. State v. Johnson, 616 So.2d 1, 4 (Fla.1993); accord Martinez v. Scanlan, 582 So.2d 1167, 1172 (Fla.1991) ("The act may be as broad as the legislature chooses provided the matters included in the act have a natural or logical connection"). The single subject requirement is satisfied if a "reasonable explanation exists as to why the legislature chose to join the two subjects within the same legislative act." Johnson, 616 So.2d at 4.
Here, as observed by the Second District in the decision below, all of the provisions of chapter 97-239, Laws of Florida (which created the Act) pertain to reoffenders. Accord Jackson v. State, 744 So.2d 466 (Fla. 1st DCA 1999); Young v. State, 719 So.2d 1010 (Fla. 4th DCA 1998). Where, as here, there is a logical nexus between the statute's various provisions, the single subject requirement of the Florida Constitution has not been violated.

DOUBLE JEOPARDY
Next, Grant asserts that the two concurrent, fifteen-year sentences imposed upon him for the single offense of sexual battery violate double jeopardy.[4] The double jeopardy clause of the United States Constitution "protects against multiple punishments for the same offense." Ohio v. Johnson, 467 U.S. 493, 498, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). This protection is "designed to ensure that the *658 sentencing discretion of the courts is confined to the limits established by the legislature." Id. at 499, 104 S.Ct. 2536.
Relevant to this question, section 775.082(9)(a)2., Florida Statutes (1997), provides, in pertinent part, that, "[u]pon proof from the state attorney that establishes by a preponderance of the evidence that a defendant is a prison releasee reoffender... such a defendant is not eligible for sentencing under the sentencing guidelines and must be sentenced" in accordance with the Act. Pursuant to section 775.082(8)(a)2.c., Florida Statutes (1997), the sentence provided for a felony of the second degree is "a term of imprisonment of fifteen years." However, section 775.082(8)(c), Florida Statutes (1997), provides, further, that "[n]othing in this subsection shall prevent a court from imposing a greater sentence of incarceration as authorized by law, pursuant to s. 775.084 or any other provision of law." Importantly, section 775.082(8)(d)1., Florida Statutes (1997), reflects the intent of the Legislature "that offenders previously released from prison who meet the criteria in paragraph (a) be punished to the fullest extent of the law and as provided in this subsection." (Emphasis added).
The legislative intent, as expressed in these provisions, is clear. As we held in Cotton:
[W]hen the Act is properly viewed as a mandatory minimum statute, its effect is to establish a sentencing "floor." If a defendant is eligible for a harsher sentence "pursuant to [the habitual offender statute] or any other provision of law," the court may, in its discretion, impose the harsher sentence. See § 775.082(8)(c), Fla. Stat. (1997).
Cotton, 769 So.2d at 354. It is no different to impose, on a qualifying defendant, a PRR mandatory sentence concurrently with a longer HFO sentence than to impose a mandatory minimum sentence for use of a firearm concurrently with a longer HFO sentence. Cf. Jackson v. State, 659 So.2d 1060, 1063 (Fla.1995) (holding that a defendant could receive a minimum mandatory sentence for possession of a firearm to run concurrently with an HFO sentence for offenses occurring within a single criminal episode). The Second District recognized this similarity in its decision in this case. See Grant, 745 So.2d at 522.
The First District, in Smith v. State, 754 So.2d 100 (Fla. 1st DCA 2000), applied the same analogy. In Smith, the defendant was convicted of robbery and sentenced to thirty years as a habitual felony offender, with a concurrent fifteen-year mandatory minimum term as a prison releasee reoffender. The First District found that this did not violate double jeopardy:
In the PRR Act, the Legislature wrote, "Nothing in this subsection shall prevent a court from imposing a greater sentence of incarceration as authorized by law, pursuant to s. 775.084, or any other provision of law." Sec. 775.082(8)(c), Fla. Stat. (1997). We find that this subsection allows a trial court to impose an HFO sentence on a PRR when the defendant qualifies under both statutes. It does not require a trial court to choose between one or the other. When a defendant receives a sentence like the one in this case, the PRR Act operates as a mandatory minimum sentence. It does not create two separate sentences for one crime.
Smith, 754 So.2d at 101; see also Alfonso, 761 So.2d at 1231 (affirming the defendant's conviction and sentence in all respects, and certifying conflict with Adams "on the issue of whether the double jeopardy clause precludes sentencing of a defendant as both a prison releasee reoffender and a habitual felony offender"). We agree with the conclusion of the First, Second and Third Districts that the imposition of an applicable longer, concurrent term of imprisonment with a PRR mandatory minimum sentence does not violate double jeopardy.
The concern expressed by the *659 Fourth District in Adams[5] is based upon an erroneous analysis of the interplay between the two recidivist statutes. The Fourth District reasoned that, by sentencing the defendant "to the first fifteen years as a PRR, for which no gain time is credited, appellant would only accumulate the gain time in the last fifteen years [of his concurrent 30 year HFO sentence], and would serve 12.75 additional years, or 27.75 years minimum, which would deprive him of allowable gain time under the HFO statute." Adams, 750 So.2d at 660 (emphasis added). We disagree with this interpretation. Where a defendant is convicted of a single offense which qualifies for a sentence longer than an applicable mandatory minimum established by the Legislature, and the Legislature has authorized imposition of such longer sentence in the act creating the mandatory minimum, gain time would still accrue with respect to the non-PRR sentence during the overlapping time that both the mandatory minimum sentence and a portion of the longer sentence are being served; however, such gain time would obviously apply only to the longer sentence, and not to the mandatory minimum. This result both ensures that no sentence longer than that authorized by law will be imposed, and fulfills the intent of the Legislature that qualifying offenders be punished to the "fullest extent of the law," including imposition of a mandatory minimum sentence.
Applying these principles here, as established in Cotton, the Legislature's intent both to provide a mandatory minimum term of imprisonment pursuant to the Act and to allow for imposition of the greatest sentence authorized by law is clear. Because Grant qualified as a prison releasee reoffender and the State sought sentencing pursuant to the Act, the trial court was required to impose the mandatory minimum with respect to Grant's sexual battery offense. See § 775.082(8)(a)2 a, Fla. Stat. (1997). Further, as Grant concedes, with applicable gain time provisions, the HFO sentence imposed here could have terminated before the mandatory minimum sentence would have been served. Therefore, had the trial court failed to impose a PRR mandatory minimum sentence concurrent with any applicable longer HFO sentence, this potentially could have defeated the intent of the Act, resulting in reversible error. Cf. State v. Calzada-Padron, 708 So.2d 287 (Fla. 2d DCA 1996) (reversing downward departure sentence of 364 days in the county jail where the trial court erred in failing to impose a three-year mandatory minimum prison sentence on the qualifying defendant, as required by section 775.087(2), Florida Statutes (1993)); Kelly v. State, 359 So.2d 493 (Fla. 1st DCA 1978) (setting aside illegal sentence of twenty years imprisonment for sexual battery where thirty years was required by section 775.082(3)(a), Florida Statutes).
While imposition of equal concurrent sentences thus did not violate double jeopardy principles, it did, nonetheless, violate the express provisions of the Act. As recognized by the First District in Walls, 765 So.2d at 734, because "section 775.082(8)(c) only authorizes the court to deviate from the [Act's] sentencing scheme to impose a greater sentence of incarceration," a trial court is "without authority to sentence [a defendant to an equal sentence] under the habitual felony offender statute," even where such sentence is imposed concurrently with the PRR sentence. Thus, the trial court erred in imposing two concurrent, equal sentences in this case, not because such sentencing violated double jeopardy, but because it is not authorized by the Act.

*660 EQUAL PROTECTION
Grant also asserts that the PRR classification is not rationally related to the legislative goal of imposing enhanced punishment upon offenders who commit a new violent offense after release from incarceration and, therefore, violates equal protection. Specifically, he contends that the Act draws no rational distinction between offenders who serve county jail sentences and those who commit the same acts and yet serve short prison sentences; between those who commit a new offense on the third anniversary of release from prison and others who commit a similar offense three years and a day after release; and between offenders who commit enumerated felonies within three years after their release from the Florida state prison system and those who were recently released from federal prison, local jails or other state prisons. In King v. State, 557 So.2d 899 (Fla. 5th DCA 1990), a similar argument was rejected in the context of an equal protection challenge to an early recidivist statute which was claimed to have created inequitable classes (which were underinclusive) because it applied only to those whose prior offenses were committed in the State of Florida. See King, 557 So.2d at 902 (rejecting an equal protection challenge to Florida's rewritten HFO act, finding that the classification created by the statute had "some reasonable basis and thus does not offend the constitution simply because it may result in some degree of inequality") (citing Bell v. State, 369 So.2d 932 (Fla.1979) (reflecting that the "mere failure to prosecute all offenders is no ground for a claim of denial of equal protection")). As observed by the Fifth District in King, "[e]qual protection does not require a state to choose between attacking every aspect of a problem or not attacking it at all." Id. at 902 (citing In re Estate of Greenberg, 390 So.2d 40, 46 (Fla. 1980)). "It is not a requirement of equal protection that every statutory classification be all-inclusive." Rather, "the statute must merely apply equally to members of the statutory class and bear a reasonable relationship to some legitimate state interest." LeBlanc v. State, 382 So.2d 299, 300 (Fla.1980) (citations omitted).
The Legislature "has wide discretion in creating statutory classifications, and there is a presumption in favor of validity." State v. Leicht, 402 So.2d 1153, 1154 (Fla.1981) (citations omitted). A statutory classification will be deemed to violate equal protection only if it causes "different treatments so disparate as relates to the difference in classification so as to be wholly arbitrary." In Re Estate of Greenberg, 390 So.2d 40, 42 (Fla.1980) (citations omitted). As we have stated in a different context, where, as here, no suspect classification is involved, "the statute need only bear a reasonable relationship to a legitimate state interest." Some inequality or imprecision will not "render a statute invalid." Acton v. Fort Lauderdale Hospital, 440 So.2d 1282, 1284 (Fla.1983).
Here, the challenged Act does bear that reasonable relationship. In Cotton, we determined that the Act embodies a legitimate scheme for effectuating the apparent legislative purpose:
The criteria included in the Act encompass those recidivists who have shown either a repeated or an escalating pattern of criminal behavior, reflecting resistance to prison's prospectively deterrent effect. While the Act's classification scheme does not differentiate based upon the character of the releasee's prior crimes, it does focus on the character (and severity) of the latest criminal conduct, together with the fact that recent imprisonment did not dissuade the defendant from engaging in the qualifying offense. Thus, for this particular set of "violent felony offenders" (meaning, in this context, those offenders who commit any of the Act's enumerated felonies), the legislative goal of preventing the commission of additional serious crimes is accomplished by providing enhanced incapacitation, through longer prison terms. *661 769 So.2d at 356. Specifically, we held that the "`substantive penological policies announced' by the Florida Legislature in enacting this statute are legitimately furthered by the structure of the Act." Id.

Here, the classification of a "prison releasee reoffender" as one who commits an enumerated crime "within 3 years of being released from a state correctional facility operated by the Department of Corrections or a private vendor," § 775.082(8)(a)1., Fla. Stat. (1997), does not appear to be wholly arbitrary. Rather, such classification is reasonably related to the legitimate state interest of preventing violent crimes committed by "recidivists who have shown either a repeated or an escalating pattern of criminal behavior, reflecting resistance to prison's prospectively deterrent effect." Cotton, 769 So.2d at 356. As stated by the Fourth District in Rollinson v. State, 743 So.2d 585, 589 (Fla. 4th DCA 1999), review granted, 761 So.2d 331 (Fla.2000):
The Act's classification and increased punishment for prison releasee reoffenders is rationally related to the legitimate state interests of punishing recidivists more severely than first time offenders and protecting the public from repeat criminal offenders. Limiting the Act's application to releasees who commit one of the enumerated felonies within three years of prison release is not irrational.
Consistent with decisions of the First, Second and Fourth Districts, and with our own analysis in Cotton, we again conclude that the Act does not violate equal protection principles.

EX POST FACTO
Last, Grant contends that "the only way to save the statute from ex post facto application is to hold that it is prospective only to those inmates released after its effective date." This argument is without merit, and has been rejected not only by the Second District herein, but also by the First, Fourth, and Fifth Districts. See Chambers v. State, 752 So.2d 64, 66 (Fla. 1st DCA 2000)(rejecting ex post facto argument where Act applied to criminal conduct which occurred after the effective date of the Act), review granted, No. SC00-416, 767 So.2d 454 (Fla. May 23, 2000); Gray v. State, 742 So.2d 805, 806 (Fla. 5th DCA 1999) (upholding the constitutionality of the Act and agreeing with the Fourth District's ex post facto analysis in Plain v. State, 720 So.2d 585 (Fla. 4th DCA 1998)), review granted, 751 So.2d 1252 (Fla.2000); Plain v. State, 720 So.2d 585 (Fla. 4th DCA 1998) (holding that the Act was not an ex post facto law as applied to a defendant who was released from prison before the Act became effective, but who committed a felony enumerated in the Act after its effective date and within three years after being released), review denied, 727 So.2d 909 (Fla.1999). As the appellate court here noted, the rationale governing the outcome in Plain applies equally here:
In this case, the Act increases the penalty for a crime committed after the Act, based on release from prison resulting from a conviction which occurred prior to the Act. It is no different than a defendant receiving a stiffer sentence under a habitual offender law for a crime committed after the passage of the law, where the underlying convictions giving the defendant habitual offender status occurred prior to the passage of the law. Under those circumstances habitual offender laws have been held not to constitute ex post facto law violations.
Plain, 720 So.2d at 586, quoted in Grant, 745 So.2d at 522. The Act increases the penalty for a crime committed after its enactment, based upon release from a term of imprisonment resulting from a conviction which occurred prior to the Act. A habitual offender sentence is not an additional penalty for an earlier crime; rather, it is an increased penalty for the latest crime, which is an aggravated offense because of the repetition. See Gryger v. Burke, 334 U.S. 728, 732, 68 S.Ct. *662 1256, 92 L.Ed. 1683 (1948); accord McDonald v. Massachusetts, 180 U.S. 311, 313, 21 S.Ct. 389, 45 L.Ed. 542 (1901) (finding that a statute which imposes a punishment only on future crimes is not ex post facto, even though a conviction prior to the statute results in increased punishment). As the United States Supreme Court has held, "enhanced sentencing for recidivism does not violate ex post facto principles despite the fact that the prior offenses forming a basis for enhancement occurred prior to enactment of the enhancement provision." Rollinson, 743 So.2d at 587 (citing Parke v. Raley, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992)); see also Cross v. State, 96 Fla. 768, 782, 119 So. 380, 385 (1928) (observing that, "[b]ut for the commission of the subsequent offense, the enhanced penalty would not be imposed"); cf. Raulerson v. State, 609 So.2d 1301 (Fla.1992)(rejecting ex post facto challenge to the violent habitual felony offender provisions of section 775.084, Florida Statutes).
Nor is Grant's argument that the Act applies only to inmates released after its effective date persuasive. See Young v. State, 719 So.2d 1010, 1011 (Fla. 4th DCA 1998) (rejecting a claim that the Act did not apply to those inmates released prior to the Act's effective date because, even though section 944.705(6)(a), Florida Statutes (1997), requires the Department of Corrections to give notice of the Act, a separate provision, section 944.705(6)(b), allows a trial court to impose an enhanced sentence under the Act regardless of whether this notice has been given). Here, the Legislature indicated that the Act was enacted both because "the people of this state and the millions of people who visit our state deserve public safety and protection from violent felony offenders who have previously been sentenced to prison and who continue to prey on society by reoffending," and because "the Legislature finds that the best deterrent to prevent prison releasees from committing future crimes is to require that any releasee who commits new serious felonies must be sentenced to the maximum term of incarceration allowed by law, and must serve 100 percent of the court-imposed sentence." Chapter 97-239, Laws of Florida. The Legislature's intent to apply the Act to all qualifying defendants who commit an enumerated offense after the Act's effective date is clear. See § 775.082(8)(a)1., Fla. Stat. (1997) (defining "prison releasee reoffender" as "any defendant who commits or attempts to commit" one of the felonies enumerated in 775.082(8)(a)1 "within three years of being released from a state correctional facility operated by the Department of Corrections or a private vendor")(emphasis supplied). Therefore, Grantwho meets the definition of a "prison releasee reoffender," and who committed an enumerated felony after the effective date of the statutewas properly sentenced under the Act to fifteen years in the Department of Corrections.
Based upon the foregoing, we approve the decision of the Second District in Grant to the extent that it is consistent with this opinion, and quash that portion of the decision which upheld the imposition of two equal concurrent sentences pursuant to the Act and the habitual felony offender statute. We remand this case to the Second District for further proceedings consistent with this opinion.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD and PARIENTE, JJ., concur.
QUINCE, J., concurs in part and dissents in part with an opinion.
QUINCE, J., concurring in part and dissenting in part.
I concur in the result reached by the majority, but on different grounds. I adhere to my belief that the Prison Releasee Reoffender Act is unconstitutional as a violation of the separation of powers doctrine embodied in article II, section 3 of the Florida Constitution. See State v. Cotton, 769 So.2d 345 (Fla.2000)(Quince, J., *663 dissenting). Because that act is unconstitutional, it cannot be the basis for the sentence imposed in this case. The only appropriate sentence here is the habitual offender sentence. I would remand for resentencing as a habitual offender only.
NOTES
[1] However, Grant is consistent with decisions of the Third and First Districts addressing the double jeopardy issue. See Alfonso v. State, 761 So.2d 1231 (Fla. 3d DCA 2000) (affirming Alfonso's conviction and sentence as both a prison releasee reoffender and a habitual felony offender in all respects, but certifying conflict with Adams v. State, 750 So.2d 659 (Fla. 4th DCA 1999), on the issue of whether the double jeopardy clause precludes such concurrent sentencing); Smith v. State, 754 So.2d 100 (Fla. 1st DCA 2000) (finding that such concurrent sentences do not violate double jeopardy). But cf. Walls v. State, 765 So.2d 733 (Fla. 1st DCA 2000) (holdingwithout implicating the double jeopardy provision that, because "section 775.082(8)(c) only authorizes the court to deviate from the PRR sentencing scheme to impose a greater sentence of incarceration," concurrent, equal habitual felony offender and prison releasee reoffender sentences are not authorized).
[2] Specifically, Grant argued that the Act violates: (1) the single subject requirement; (2) separation of powers; (3) the proscription against cruel and unusual punishment; (4) the proscription against vagueness; (5) substantive due process requirements; (6) equal protection; (7) the proscription against ex post facto laws; and (8) double jeopardy (because it consists of two separate sentences as a prison releasee reoffender and a habitual felony offenderfor a single offense).
[3] Issues 2, 3, 4, 5 and 6. With respect to issue no. 6, Grant acknowledged that the First District held, in Woods v. State, 740 So.2d 20 (Fla. 1st DCA 1999), approved sub nom. State v. Cotton, 769 So.2d 345 (Fla.2000), that the Act did not violate separation of powers, and requested that the Court accord him whatever relief Woods received on this issue.
[4] The record reflects that, in a motion to declare the Act unconstitutional, Grant argued that the Act violated constitutional provisions against double jeopardy. Thereafter, when Grant entered his plea and actually received two concurrent sentences as a prison releasee reoffender and as a habitual felony offender for the single offense of sexual battery, he failed to renew this specific objection. However, such an alleged double jeopardy violation, if proven, would constitute fundamental error which need not be preserved to be considered on appeal. See generally Maddox v. State, 760 So.2d 89 (Fla.2000) (holding that an appellate court may, on direct appeal, correct as fundamental error an unpreserved sentencing error which is patent and serious).
[5] The Fifth District apparently agreed with the Adams analysis. See Thomas v. State, 745 So.2d 1119, 1120 (Fla. 5th DCA 1999)(holding that it was a violation of double jeopardy to impose a concurrent 30-year sentence under the violent career criminal statute, section 775.084(1)(d), Florida Statutes, with a 15-year term of imprisonment under the Act)(citing Adams).