780 So.2d 277 (2001)
Jerry Lacel MILLER, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D99-3043.
District Court of Appeal of Florida, Third District.
March 7, 2001.
*278 Bennett H. Brummer, Public Defender and Robert Kalter, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General and Linda S. Katz, Assistant Attorney General, for appellee.
Before COPE, GERSTEN, and GREEN, JJ.
GREEN, J.
Appellant Jerry Miller appeals his conviction and sentence entered pursuant to a jury verdict, for attempted first degree murder with a firearm, two counts of attempted second degree murder, shooting a deadly missile and possession of a firearm by a convicted felon.
The victims, Lakitshia Kemp, Fletcher Everette and Larry Brown were riding in a car when another car pulled up, fired several shots at them and fled the scene. Ms. Kemp was struck in the leg by one of the bullets. The car used in the shooting was later found in the driveway of Ms. Gloria Stewart.
During the police investigation, Ms. Stewart's son, Keith, told the police that Miller had left the car in the driveway. A day later, Everette, accompanied by his parents, voluntarily went to the police and gave a taped statement that Miller was the person who shot into the car. In addition, Everette's mother told Detective Ford that her son was in fear of Miller.
Prior to trial, the state moved in limine to prevent defense counsel from mentioning the portion of the taped statement given by Everette regarding an incident one month earlier, in which Stewart had fired a gun at him. The court granted the motion in limine over objection by the defense.
At trial, Ms. Kemp failed to identify Miller as the person who shot her.[1] Moreover, contrary to their pretrial statements to the police, Stewart testified that he did not know who parked the car in his mother's driveway, and Everette testified that he was unable to identify the person who fired the shots into their car. The trial court subsequently allowed the state to impeach Stewart and Everette, both state's witnesses, after finding that their change in testimony was a surprise to the prosecutor.
During direct examination of the detective, the state elicited testimony that Everette's mother told him that Everette was afraid of Miller. The defense's objection to that testimony was sustained on the grounds of double hearsay, and a limiting instruction was given. The motion for mistrial was denied. The detective also testified from personal knowledge, that during the time in which Everette unequivocally identified Miller from a photo lineup, Everette appeared to be fearful. Objections to this testimony was overruled and the motion for mistrial denied.
The jury found Miller guilty on all counts. The trial court adjudicated him both a prison releasee reoffender and a habitual felony offender and sentenced him *279 to life imprisonment on the attempted first degree murder charge and fifteen years on the remaining four counts. All sentences were ordered to run concurrent with each other. Miller now raises five issues on appeal.
First, he argues that the trial court improperly allowed the state, under the guise of impeachment, to rely upon the pretrial inconsistent statements of Everette and Stewart as substantive evidence of Miller's guilt. This issue, however, was not properly preserved for our review as there was neither a specific and contemporaneous objection that the statements could not be used as substantive evidence nor a request for a limiting instruction. See Bolin v. State, 736 So.2d 1160, 1166 (Fla.1999). Even if it had been adequately preserved, this argument would lack merit based upon the trial court's findings that Everette and Stewart were recanting witnesses and that the prosecutor was surprised by their trial testimony. See Morton v. State, 689 So.2d 259, 264 (Fla.1997) (surprise indicates that the state's impeachment was not merely a ruse to allow jury to consider hearsay statements that were not substantively admissible).
Similarly, Miller asserts that the trial court improperly permitted the state to present hearsay testimony to establish that Everette and Stewart's in-court testimony exonerating Miller should not be believed because it was given out of fear. Miller claims that the only evidence of such fear was the inadmissible hearsay statement of Everette's mother to the detective, and therefore reversal is required. We disagree.
Admittedly, hearsay testimony regarding the statement given by Everette's mother of her son's fear, was elicited from the detective. However, the trial court properly sustained the defense's objection to this testimony and instructed the jury to disregard the detective's answer. Thus, there is no ground here for reversal. Mason v. State, 438 So.2d 374, 377 (Fla. 1983). Detective Ford, however, testified that he perceived Everette to be in fear during the pretrial photo line-up. The detective's own observation of Everette's fear falls within the hearsay exception contained in section 90.803(3)(a)(2), Florida Statutes (1995),[2] and explains Everette's then mental or emotional condition and his subsequent recantation at trial. See Lopez v. State, 716 So.2d 301 (Fla. 3d DCA 1998) (sergeant's testimony as to witness' fear admissible under § 90.803(3), to explain witness' subsequent conduct at trial recanting a prior unequivocal identification of defendant).
As his third point on appeal, Miller contends that he was prohibited from presenting a defense when the trial court improperly limited his cross-examination of the state's witness, Stewart. Specifically, Miller's proposed defense at trial was that Stewart was the individual who shot inside the victims' car. In furtherance of this defense, Miller sought, on cross-examination, to elicit from Everette that Stewart had shot at him on a prior occasion. Miller maintains that this fact coupled with the fact that the car used in the shooting was found in Stewart's driveway would have supported his defense that Stewart was in fact the person who fired the gun.
As a general rule, trial courts have wide discretion in imposing limits on the *280 scope of cross-examination. See Jones v. State, 580 So.2d 143, 145 (Fla.1991). Our state supreme court has explicitly stated that if a "defendant seeks to elicit testimony from an adverse witness which goes beyond the scope encompassed by the testimony of the witness on direct examination, other than matters going to credibility, he must make the witness his own." See Penn v. State, 574 So.2d 1079, 1082 (Fla.1991) (quoting Steinhorst v. State, 412 So.2d 332, 337 (Fla.1982).) As such, a defendant may not use cross-examination as a vehicle for presenting substantive evidence of his defense. Id. Here, Miller could and should have called Stewart as his own witness to develop his desired theory of defense. Accordingly, we find that the trial court properly limited the cross-examination of Everette to issues involving his credibility and matters brought out during his direct testimony.
As a second prong to this argument, Miller complains that pursuant to the "rule of completeness", Everette's taped pretrial statement, which was redacted and played for impeachment purposes, should have been played in its entirety to include Everette's statement that Stewart had previously shot at him. The "rule of completeness" is codified in section 90.108, Florida Statutes (1987), and provides that when a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part of the writing or recorded statement that in fairness ought to be considered contemporaneously. This doctrine is intended "to avoid the potential for creating misleading impressions by taking statements out of context." Larzelere v. State, 676 So.2d 394, 401 (Fla.1996).
In this case, the state correctly asserts that by introducing the tape of Everette's prior identification of Miller for impeachment purposes, it did not open any door which would have otherwise entitled Miller to introduce a totally unrelated shooting incident between Everette and Stewart at this trial. We find that a taped statement by Everette, concerning a previous altercation with Stewart would simply have been misleading to the jury. Thus, the trial court did not err in excluding such evidence.
Next, Miller challenges the legality of his sentence as both a prison releasee reoffender ("PRR") pursuant to section 775.082(8) (1997) and as a habitual felony offender pursuant to section 755.084 (1997). Miller was sentenced to life imprisonment as to the attempted first degree murder count and fifteen years as to the remaining counts with no delineation by the trial court as to the years assigned as a PRR and a habitual felony offender. We, therefore, must conclude that these sentences were impermissibly imposed equally under each statute. Grant v. State, 770 So.2d 655 (Fla.2000). In Grant, the defendant received concurrent fifteen-year sentences as a PRR and as a habitual felony offender for the single offense of sexual battery. Although the Florida Supreme Court found the imposition of equal concurrent sentences under both the PRR and the habitual felony offender statute not to be violative of double jeopardy principles, the court did find the sentence to violate the express provisions of the PRR statute. Id. Citing with approval to the first district's decision in Walls v. State, 765 So.2d 733, 734 (Fla. 1st DCA 2000), the court stated that "a trial court is `without authority to sentence a defendant to an equal sentence under the habitual felony offender statute,' even where such sentence is imposed concurrently with the PRR sentence." Grant, 770 So.2d at 659. An upward deviation from PRR's sentencing scheme is authorized so that a greater sentence of incarceration may be imposed, but a trial court is without authority to sentence a defendant, as here, to an equal sentence under the habitual felony offender statute. Yehowshua v. State, 773 So.2d 654 (Fla. 4th DCA 2000). Because life imprisonment plus 15 years under the habitual felony offender statute is not greater *281 than a life term plus 15 years under the PRR statute, the trial court was not authorized to sentence Miller under both. Accordingly, this case must be remanded for Miller to be sentenced only as a PRR.
Finally, Miller challenges his two convictions for attempted second degree murder on the ground that attempted second degree murder is a non-existent crime in Florida. Contrary to Miller's argument, and during the pendency of this appeal, the Florida Supreme Court found that attempted second degree murder is an existing crime. See Brown v. State, 25 Fla. Law Weekly S792, ___ So.2d ___, 2000 WL 1472598 (Oct. 5, 2000). Thus, this argument also lacks merit.
For all of the foregoing reasons, we affirm Miller's convictions, but find that the trial court erred in sentencing him both as a PRR and as a habitual felony offender. We, therefore, reverse this sentence and remand for the trial court to sentence him only as a PRR. See Miller v. State, 772 So.2d 611 (Fla. 1st DCA 2000).
Affirmed in part, reversed in part and remanded.
COPE, J. (concurring).
I agree and would add that the statements identifying the defendant were independently admissible as substantive evidence. The Evidence Code treats as nonhearsay an out-of-court statement "of identification of a person made after perceiving the person." § 90.801(2)(c), Fla. Stat. (1999). As explained by Professor Ehrhardt:
When a witness identifies an individual before a trial, section 90.801(2)(c) provides that the out-of-court statements of identification made after the witness has perceived the individual are excluded from the definition of hearsay. Therefore, the out-of-court statement of identification is admissible in court to prove the truth of the matter asserted, e.g., to prove that the person identified was the person who committed the act.
Section 90.801(2)(c) is applicable regardless of whether the declarant identifies the individual in court. The failure of the witness to repeat the identification in court does not affect the admissibility of evidence of the prior identification.

Charles W. Ehrhardt, Florida Evidence § 801.9, at 662 (2000) (footnotes omitted; emphasis added); see also Lopez v. State, 716 So.2d 301, 304 n. 3 (Fla. 3d DCA 1998). Because the statements of identification were independently admissible as substantive evidence, it follows that the defendant would not have been entitled to a limiting instruction, see majority opinion at 4, even if one had been requested.
NOTES
[1] Larry Brown, the third victim, did not testify at trial.
[2] Section 90.803(3) provides as follows:

(3) Then existing mental, emotional, or physical condition.
(a) A statement of the declarant's then existing state of mind, emotion, or physical sensation, including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health, when such evidence is offered to:
1. Prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when such state is an issue in the action.
2. Prove or explain acts of subsequent conduct of the declarant.