957 So.2d 605 (2007)
Roy McDONALD, Petitioner,
v.
STATE of Florida, Respondent.
No. SC05-2141.
Supreme Court of Florida.
May 17, 2007.
*606 Abe Bailey, Miami, Florida, and Clayton R. Kaeiser, Miami Beach, FL, for Petitioner.
Bill McCollum, Attorney General, Tallahassee, FL, Celia A. Terenzio, Bureau Chief, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, FL, for Respondent.
BELL, J.
We review the decision of the Fourth District Court of Appeal in McDonald v. State, 912 So.2d 74 (Fla. 4th DCA 2005), in which it certified conflict on two issues. First, it certified conflict with the decisions of the Second District Court of Appeal in Hall v. State, 837 So.2d 1179, 1180 (Fla. 2d DCA 2003), and Helms v. State, 890 So.2d 1256 (Fla. 2d DCA 2005), on the issue of whether the mandatory minimum sentence under the Prison Releasee Reoffender (PRR) statute, section 775.082(9) Florida Statutes (2000), must be imposed concurrently with a lesser mandatory minimum sentence under section 775.087, Florida Statutes (2000) (the 10-20-LIFE statute). Second, the Fourth District certified conflict with the decision of the Third District Court of Appeal in Frazier v. State, 877 So.2d 838 (Fla. 3d DCA 2004), on the issue of whether the mandatory sentence for first-degree robbery with a firearm under the PRR statute is thirty years or life in prison.[1] As we explain, we approve the Fourth District's decision in McDonald. We hold (1) that a mandatory minimum 10-20-LIFE sentence must be imposed concurrently with a PRR sentence even when the 10-20-LIFE sentence is the lesser sentence and (2) that the mandatory sentence for first-degree robbery with a firearm under the PRR statute is life in prison. Accordingly, we disapprove the decisions in Hall and Helms as to the first conflict issue. To the extent it conflicts with McDonald, we disapprove Frazier as to the second conflict issue.[2]

FACTS AND PROCEDURAL BACKGROUND
The background of this case was well summarized by the Fourth District in McDonald as follows:

*607 Roy McDonald appeals the denial of his Florida Rule of Criminal Procedure 3.800(a) motion which raised five claims of an illegal sentence. We affirm the trial court's denial of all five claims. We write to address two of the claims and sit en banc to recede from a series of prior decisions by this court which the state has shown are clearly contrary to the plain meaning and legislative intent of the 10-20-LIFE statute. § 775.087, Fla. Stat. (2000).
McDonald was convicted after jury trial of five felony counts: carjacking with a firearm, two counts of robbery with a firearm, aggravated fleeing and eluding, and grand theft auto. Because he committed these offenses just over two months after being released from prison, McDonald was properly designated and sentenced as a prison releasee reoffender (PRR) on the first three counts which are enumerated offenses under the PRR statute. § 775.082(9)(a)1, Fla. Stat. (2000). The trial court imposed concurrent mandatory life sentences on the carjacking with a firearm and robbery with a firearm counts. § 775.082(9)(a)3a, Fla. Stat. (2000). As a PRR, McDonald must serve 100 percent of his life sentences and is not eligible for any form of early release. § 775.082(9)(b), Fla. Stat. (2000).
In addition to these mandatory minimum life sentences as a PRR, the trial court imposed concurrent ten-year mandatory minimum sentences on these counts for McDonald's possession of a firearm during the offenses. § 775.087(2)(a)1, Fla. Stat. (2000) (10-20-LIFE statute).
912 So.2d at 74-75.
As stated above, the Fourth District considered two issues and certified conflict on each. First, the Fourth District considered "the legality of imposing mandatory minimum penalties under the PRR statute concurrently with the mandatory minimum penalties of the 10-20-LIFE statute." Id. at 75. It determined that the language of the 10-20-LIFE statute requires that "the mandatory minimum terms of incarceration be included even where those terms are less than the sentence authorized under the PRR statute or any other provision of law." Id. Accordingly, the Fourth District receded from its prior holdings in which it had extended this Court's decision in Grant v. State, 770 So.2d 655 (Fla.2000), to prohibit concurrent sentencing where the 10-20-LIFE statute would impose a sentence equal to or less than the sentence under the PRR statute. See McDonald, 912 So.2d at 75-76. On this issue, the Fourth District certified conflict with the decisions of the Second District in Hall and Helms.
Second, the Fourth District considered McDonald's claim "that he was improperly given mandatory life sentences for his convictions for robbery with a firearm" because, according to Frazier v. State, 877 So.2d 838 (Fla. 3d DCA 2004), "under the PRR statute the mandatory sentence for robbery is thirty years in prison." McDonald, 912 So.2d at 77 (citing §§ 812.13(2)(a), 775.082(9)(a)(3), Fla. Stat. (2000)). It determined that under this Court's precedent in Knight v. State, 808 So.2d 210, 212 (Fla.2002), "the PRR statute requires a mandatory life sentence be imposed for any felony punishable by life, including first degree felonies punishable by life." 912 So.2d at 77. On this second issue, the Fourth District certified conflict with Frazier.
We discuss each conflict issue in turn.

CERTIFIED CONFLICT ISSUES
I. Concurrent Sentencing Under the PRR Statute and the 10-20-LIFE Statute
We approve the Fourth District's determination that the mandatory minimum *608 sentence under the PRR statute must be imposed concurrently with a lesser mandatory minimum sentence under the 10-20-LIFE statute. To explain our reasoning, we first summarize the Fourth District's reasoning in receding from its prior decisions in which it had extended our holding in Grant as well as its analysis of the language of the 10-20-LIFE statute. We then conduct a de novo review and briefly explain why we agree with the Fourth District's analysis.

The Fourth District's Analysis in McDonald

In McDonald, the Fourth District receded from a series of its prior decisions extending this Court's holding in Grant to the question of whether the imposition of concurrent sentences under the 10-20-LIFE statute and the PRR statute was permissible.[3] The issue we addressed in Grant was whether a sentence under section 775.084, Florida Statutes (1997), the Habitual Felony Offender (HFO) statute, could be imposed concurrently with a sentence under the PRR statute where both sentences were of equal duration, but where the HFO sentence allowed for gain time and the PRR sentence did not. 770 So.2d at 659. Based on the language of the PRR statute expressing the Legislature's intent that "qualifying offenders be punished to the `fullest extent of the law,' including the imposition of mandatory minimum sentences," this Court held that the HFO sentence could be imposed concurrently with the PRR sentence only if the HFO sentence was greater than the PRR sentence. Id. (quoting § 775.082(8)(d)(1), Fla. Stat. (1997)). This holding rested upon the conclusion that the imposition of an equal or lesser sentence under the HFO statute, which includes gain time, would violate the express provisions of the PRR statute mandating that the greater PRR sentence be served in full. Id.[4]
Prior to McDonald, the Fourth District had extended the holding in Grant to cases involving concurrent sentencing under the PRR and 10-20-LIFE statutes. McDonald, 912 So.2d at 75-76.[5] It had held that equal or lesser 10-20-LIFE sentences could not be imposed concurrently with a greater PRR sentence. However, in McDonald, after thoroughly reviewing the language of the 10-20-LIFE statute, the Fourth District receded from its prior decisions.
The pertinent language of the 10-20-LIFE statute provides as follows:
775.087 Possession or use of weapon; aggravated battery; felony reclassification; minimum sentence.
. . . .
(2)(a)1. Any person who is convicted of a felony or an attempt to commit a felony, regardless of whether the use of *609 a weapon is an element of the felony, and the conviction was for:
. . . .
c. Robbery;
. . . .
n. Carjacking;
. . . .
and during the commission of the offense, such person actually possessed a "firearm" or "destructive device" as those terms are defined in s. 790.001, shall be sentenced to a minimum term of imprisonment of 10 years. . . .
. . . .
(c) If the minimum mandatory terms of imprisonment imposed pursuant to this section exceed the maximum sentences authorized by s. 775.082, s. 775.084, or the Criminal Punishment Code under chapter 921, then the mandatory minimum sentence must be imposed. If the mandatory minimum terms of imprisonment pursuant to this section are less than the sentences that could be imposed as authorized by s. 775.082, s. 775.084, or the Criminal Punishment Code under chapter 921, then the sentence imposed by the court must include the mandatory minimum term of imprisonment as required in this section.

(d) It is the intent of the Legislature that offenders who actually possess, carry, display, use, threaten to use, or attempt to use firearms or destructive devices be punished to the fullest extent of the law, and the minimum terms of imprisonment imposed pursuant to this subsection shall be imposed for each qualifying felony count for which the person is convicted. The court shall impose any term of imprisonment provided for in this subsection consecutively to any other term of imprisonment imposed for any other felony offense.
(Emphasis added.)
In McDonald, the Fourth District reasoned that the plain meaning of this statutory language, in particular the emphasized language of subsection (c), clearly expresses the Legislature's intent that the mandatory minimum sentence under the 10-20-LIFE statute should be imposed where the criminal possessed a firearm during the commission of the crime regardless of whether a greater sanction may be imposed under another statutory provision. 912 So.2d at 75-76. In other words, the Fourth District concluded that the plain language of the 10-20-LIFE statute clearly mandates that the mandatory minimum sentences under the 10-20-LIFE statute and the PRR statute be imposed concurrently even where, as here, the 10-20-LIFE sentence is less than the PRR sentence. Id.
The Fourth District further concluded that the legislative intent expressed in section 775.087(2)(d), that violators be "punished to the fullest extent of the law," is the same clear intent expressed in section 775.082(9)(d)(1) that was noted by this Court in Grant. Thus, the Fourth District concluded that the two statutes have a common legislative purpose and should be read in pari materia. McDonald, 912 So.2d at 76 (citing Mills v. State, 822 So.2d 1284, 1288 (Fla.2002), for proposition that "in the absence of contrary legislative intent related statutes should be read in pari materia"). The Fourth District further reasoned that "[t]o the extent the provision of the PRR statute and the 10-20-LIFE law could be seen as conflicting, the specific provisions of the 10-20-LIFE law should control over the general provisions of the PRR statute." Id. (citing Adams v. Culver, 111 So.2d 665, 667 (Fla. 1959), explaining that "a special statute *610 covering a particular subject matter is controlling over a general statutory provision covering the same other subjects in general terms").

Our De Novo Review
"Our review of the [district court's] decision addressing this issue of statutory interpretation is de novo." Cason v. Florida Dep't of Mgmt. Servs., 944 So.2d 306, 309 (Fla.2006) (citing B.Y. v. Dep't of Children & Families, 887 So.2d 1253, 1255 (Fla.2004)). We agree with the Fourth District's analysis. The meaning of the 10-20-LIFE statute is plain, and for the issue presented in this case, it is proper to construe it in pari materia with the PRR statute.
The 10-20-LIFE statute clearly expresses the Legislature's intent that the 10-20-LIFE sentence be imposed concurrently even where another statutory sentence is greater. See § 775.087(2)(c) ("If the mandatory minimum terms of imprisonment pursuant to this section are less than the sentences that could be imposed as authorized by s. 775.082 [including the PRR statute] . . ., then the sentence imposed by the court must include the mandatory minimum term of imprisonment as required in this section."). Moreover, the two related provisions of chapter 775the 10-20-LIFE statute, section 775.087, and the PRR statute, section 775.082should be construed in pari materia. As we have stated, "[t]he doctrine of in pari materia requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature's intent." Zold v. Zold, 911 So.2d 1222, 1229-30 (Fla.2005) (construing sections of chapter 61sections 61.046(7), 61.30(2)(a)(3), 61.08(2)(g), 61.30(6), and 61.16(1), Florida Statutes (2004)in pari materia, and finding that they collectively reflect the Legislature's intent concerning alimony). And, as the Fourth District found, both the 10-20-LIFE statute and the PRR statute have a common legislative intent to "punish to the fullest extent of the law." McDonald, 912 So.2d at 76 (quoting § 775.087(2)(d), Fla. Stat. (2000)).
Moreover, in resolving any perceived conflict between the interpretation of the 10-20-LIFE statute and the PRR statute, the Fourth District properly construed the 10-20-LIFE statute as a "specific" statutory provision under the criminal code and the PRR statute as a "general" statutory provision. As noted by the Fourth District, this Court stated in Adams v. Culver, 111 So.2d 665 (Fla. 1959), that
[i]t is a well settled rule of statutory construction, however, that a special statute covering a particular subject matter is controlling over a general statutory provision covering the same and other subjects in general terms. In this situation "the statute relating to the particular part of the general subject will operate as an exception to or qualification of the general terms of the more comprehensive statute to the extent only of the repugnancy, if any." It has been said that this rule "is particularly applicable to criminal statutes in which the specific provisions relating to particular subjects carry smaller penalties than the general provision."
Id. at 667 (citations omitted) (quoting Stewart v. DeLand-Lake Helen Special Rd. & Bridge Dist., 71 Fla. 158, 71 So. 42, 47 (1916), and United States v. Zenith Radio Corp., 12 F.2d 614, 618 (N.D.Ill. 1926)). The PRR statute is part of the general sentencing provision of chapter 775. It provides the mandatory minimum sentence for anyone deemed a prior releasee reoffender within the general sentencing scheme. See § 775.082, Fla. Stat. (2000). In other words, the PRR statute *611 covers sentencing for all crimes, including those involving the use of a firearm. On the other hand, the 10-20-LIFE statute addresses the mandatory minimum sentence for the use or possession of a firearm in some manner during the commission of a specified crime. See § 775.087(2)(c). Accordingly, the Fourth District properly concluded that the more specific provisions contained in the 10-20-LIFE statute should control over the more general provisions of the PRR statute as interpreted in Grant. Additionally, the Fourth District properly concluded that the language of the 10-20-LIFE statute plainly requires that the mandatory minimum sentence be imposed concurrently with the minimum mandatory sentence of the PRR statute even though the 10-20-LIFE sentence is less than the PRR sentence. See § 775.087(2)(c).
We further note that this analysis is reconcilable with Grant. First, the decision and analysis in Grant were based solely on the express language of the PRR statute, not on constitutional grounds. See 770 So.2d at 659 ("While imposition of equal concurrent sentences thus did not violate double jeopardy principles, it did, nonetheless, violate the express provisions of the [PRR statute].") Similarly, the decision in this case is based solely upon the language of the 10-20-LIFE statute. Secondly, based on the express language of both the PRR and the 10-20-LIFE statutes mandating that the defendant be punished to the fullest extent of the law, the concern addressed in Grant regarding gain time is not present in this case. In other words, like a PRR sentence, a 10-20-LIFE sentence must be served in full, and, thus, concurrently serving the lesser 10-20-LIFE sentence will not erode the greater PRR sentence.
We recognize that the imposition of a lesser sentence under the 10-20-LIFE statute concurrent with a greater sentence under the PRR statute will have very little, if any, practical effect in most cases.[6] However, the Legislature has very clearly mandated that it is the policy of this State to deter the criminal use of firearms. This mandate is underscored by the widespread promulgation of the 10-20-LIFE law beyond mere statutory notice, through television commercials, posters, and other forms of advertising. This policy is further underscored by the statement of legislative intent in section 775.087, which was added in 1999, see ch. 99-12, § 1, at 538-42, Laws of Fla., and the accompanying increase to the mandatory minimum sentence under section 775.087 from three years for all crimes to ten years for all crimes except aggravated assault, possession of a firearm, or burglary. Id. In making these changes, the Legislature made the following extensive findings:
WHEREAS, Florida ranks among the most violent states in the nation, and
WHEREAS, in 1975 the Florida Legislature enacted legislation requiring a minimum mandatory sentence of three years in prison for possessing a gun during the commission or attempted commission of a violent felony, and
WHEREAS, the Legislature enacted this mandatory penalty in order to protect citizens from criminals who are known to use guns during the commission of violent crimes, and
WHEREAS, the FBI reports that among persons identified in the felonious killings of law enforcement officers in 1997, 71% had prior criminal convictions, *612 and one of every four were on probation or parole for other crimes when they killed the officers, and
WHEREAS, criminals who use guns during the commission of violent crimes pose an increased danger to the lives, health, and safety of Florida's citizens and to Florida's law enforcement officers who daily put their lives on the line to protect citizens from violent criminals, and
WHEREAS, the Legislature intends to hold criminals more accountable for their crimes, and intends for criminals who use guns to commit violent crimes to receive greater criminal penalties than they do today, and
WHEREAS, the Legislature intends that when law enforcement officers put themselves in harm's way to apprehend and arrest these gun-wielding criminals who terrorize the streets and neighborhoods of Florida, that these criminals be sentenced to longer mandatory prison terms than provided in current law, so that these offenders cannot again endanger law enforcement officers and the public, and
WHEREAS, there is a critical need for effective criminal justice measures that will ensure that violent criminals are sentenced to prison terms that will effectively incapacitate the offender, prevent future crimes, and reduce violent crime rates, and
WHEREAS, it is the intent of the Legislature that criminals who use guns to commit violent crimes be vigorously prosecuted and that the state demand that minimum mandatory terms of imprisonment be imposed pursuant to this act, NOW, THEREFORE,
Be It Enacted by the Legislature of the State of Florida:
Section 1. Section 775.087, Florida Statutes, is amended. . . .
Ch. 99-12, at 537-38, Laws of Fla. Because the Legislature clearly intends that criminals using firearms to commit violent crimes receive the maximum sentence, the mandatory minimum 10-20-LIFE sentence must be imposed even if it is less than another sentence that runs concurrently.
Given the above, we conclude that the Fourth District's decision in McDonald properly construes the 10-20-LIFE statute. We hold that a lesser mandatory minimum 10-20-LIFE sentence must be imposed concurrently with a greater mandatory minimum PRR sentence.

II. Mandatory Sentence for Robbery under the PRR Statute
The second certified conflict issue is whether under the PRR statute the mandatory sentence for first-degree robbery with a firearm is thirty years or life imprisonment. McDonald relies on the Third District's decision in Frazier to claim that the mandatory sentence is thirty years. See Frazier, 877 So.2d at 840 (holding that mandatory sentence for first-degree robbery with a firearm is thirty years but affirming life sentence on other grounds).
The Fourth District disagreed and certified conflict. McDonald, 912 So.2d at 77. Specifically, the Fourth District found that McDonald was properly sentenced under the PRR statute to a mandatory life sentence for the commission of a robbery with a firearm. It relied upon this Court's decision in Knight, which held that "the PRR statute requires a mandatory life sentence be imposed for any felony punishable by life, including first degree felonies punishable by life." McDonald, 912 So.2d at 77.
We agree with the Fourth District. In Knight, this Court rejected a nearly identical claim that the PRR statute only imposes a thirty-year maximum sentence for robbery with a firearm since it is a "felony *613 of the first degree" rather than a "felony punishable by life." We affirmed Knight's life sentence under the PRR statute for armed robbery, holding that "the phrase `felonies punishable by life,' used in [the PRR statute], provides for a mandatory life sentence for prison releasee reoffenders who commit either life felonies or first-degree felonies punishable by life." 808 So.2d at 213-14.[7] Pursuant to section 812.13(2)(a), Florida Statutes (2000), armed robbery is a felony punishable by life. See § 812.13(2)(a) ("If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084."). Consequently, McDonald was properly sentenced to life for first-degree robbery with a firearm.

CONCLUSION
For the foregoing reasons, we approve the decision of the Fourth District in McDonald on both certified conflict issues. Consequently, we disapprove the decisions of the Second District in Helms and Hall, and, to the extent it conflicts with this opinion, we disapprove the decision of the Third District in Frazier. In so doing, we hold that the minimum sentence mandated by the 10-20-LIFE statute must be imposed concurrently with the PRR sentence even when the 10-20-LIFE sentence is the lesser sentence. Further, we hold that under the PRR statute the mandatory sentence for first-degree robbery with a firearm is life in prison.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, and CANTERO, JJ., concur.
NOTES
[1] We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
[2] McDonald raised six issues for review. We limit our review to the two certified conflict issues because we find that McDonald's other claims are without merit. With regard to the fifth issue McDonald raises, we note that McDonald was properly categorized as a "prison releasee reoffender" under section 775.082(9), Florida Statutes (2000).
[3] Sitting en banc, the Fourth District expressly receded from the following cases in McDonald, 912 So.2d at 76-77: Smith v. State, 813 So.2d 1002, 1003 (Fla. 4th DCA 2002); Brady v. State, 839 So.2d 836, 837 (Fla. 4th DCA 2003); Scott v. State, 842 So.2d 1054 (Fla. 4th DCA 2003); Hill v. State, 862 So.2d 815, 815 (Fla. 4th DCA 2003); Hill v. State, 869 So.2d 10, 11 (Fla. 4th DCA), review denied, 871 So.2d 874 (Fla.2004); and Malcolm v. State, 873 So.2d 378 (Fla. 4th DCA 2004). The certified conflict cases from the Second District, Hall and Helms, expressly rely on the Fourth District's prior decisions.
[4] In Grant, this Court recognized that imposition of equal concurrent sentences under the PRR and HFO statutes does not violate double jeopardy principles but violates the provisions of the PRR statute. 770 So.2d at 659. Thus, the rule in Grant was not based on constitutional considerations but on the Legislature's intent as expressed in the PRR statute.
[5] See supra note 3.
[6] One situation where this may have some practical effect is when the greater PRR sentence is vacated for some reason but the lesser 10-20-LIFE sentence remains valid. The offender will still be required to serve the 10-20-LIFE sentence in full.
[7] In Knight, this Court answered in the affirmative the following question of great public importance:

DOES SECTION [775.082(8)(a)2], FLORIDA STATUTES (1997), WHICH MANDATES A LIFE SENTENCE FOR PRISON RELEASEE REOFFENDERS WHO COMMIT "A FELONY PUNISHABLE BY LIFE," APPLY BOTH TO LIFE FELONIES AND FIRST DEGREE FELONIES PUNISHABLE BY IMPRISONMENT FOR A TERM OF YEARS NOT EXCEEDING LIFE?
808 So.2d at 211. Section 775.082(8)(a)(2) was renumbered in 1998 as section 775.082(9)(a)(2). See ch. 98-204, § 10, Laws of Fla. Both versions of the PRR statute provide as follows:
2. If the state attorney determines that a defendant is a prison releasee reoffender as defined in subparagraph 1., the state attorney may seek to have the court sentence the defendant as a prison releasee reoffender. Upon proof from the state attorney that establishes by a preponderance of the evidence that a defendant is a prison releasee reoffender as defined in this section, such defendant is not eligible for sentencing under the sentencing guidelines and must be sentenced as follows:
a. For a felony punishable by life, by a term of imprisonment for life;
b. For a felony of the first degree, by a term of imprisonment of 30 years. . . .