39 So.3d 419 (2010)
Samuel WOODALL, Appellant,
v.
STATE of Florida, Appellee.
Nos. 5D09-1717, 5D09-1718.
District Court of Appeal of Florida, Fifth District.
June 25, 2010.
*420 Jack D. Hoogewind, Dade City, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Rebecca Rock McGuigan, Assistant Attorney General, Daytona Beach, for Appellee.
JACOBUS, J.
Samuel Woodall appeals the denial of his motion to withdraw plea, filed pursuant to Florida Rule of Criminal Procedure 3.170(l). He argues the motion should have been granted because his plea was involuntary. We agree and reverse.
Woodall's plea agreement covered two separate cases, 2007-CF-2689 and 2008-CF-0983. It disposed of the charges in a third case, 2008-CT-0064, with a nolle prosequi. In the first case (07-2689), Woodall was charged with aggravated assault with a deadly weapon, simple battery, resisting a law enforcement officer without violence, and criminal mischief. In the second case (08-983), he was charged with one count of aggravated assault with a deadly weapon. The third case (08-64) involved a charge for driving under the influence.
Before entering his pleas, Woodall was brought to trial in case number 08-983, which arose from an altercation between Woodall and his mother and stepfather. The State expected the evidence to show that an intoxicated Woodall went to his mother's home to ask for money and became enraged when she refused. During his tirade, Woodall held a knife to his stepfather's throat and threatened to cut off his head. His mother called the police. An officer arrived as Woodall was driving away in his truck. The officer stopped Woodall and found a knife under the driver's seat. Woodall was arrested after the officer interviewed his parents. The stepfather gave a sworn verbal statement that Woodall grabbed him around the neck and held a knife to his throat during the incident, and the mother gave a sworn verbal statement describing the knife. The next day, the stepfather made the same sworn statement in writing. The knife found in Woodall's truck matched the mother's description.
The State was surprised by the victim's testimony at trial. The stepfather said he did not see or feel a knife when Woodall grabbed him around the neck and threatened to cut off his head; rather, he just assumed Woodall had a knife. Woodall's mother testified that she was in another room when Woodall threatened her husband. She also said she never saw a knife. The State impeached both witnesses with their prior inconsistent statements through the arresting officer's testimony and the stepfather's written police statement.
The trial court denied defense counsel's motion for judgment of acquittal, but ultimately granted a mistrial when the jury could not reach a unanimous verdict. The court indicated the retrial would be held the following day and denied defense counsel's motion for a continuance. At that point, the State and defense began discussing the possibility of a global settlement for all three of Woodall's pending cases. The negotiations continued for some time. Woodall's attorney told him, on the record, *421 that he had dodged a bullet, he was lucky he was not convicted, and the State's plea offer was in his best interest. Woodall remained somewhat ambivalent toward entering a plea. He asked for more time to make a decision. The court gave Woodall until the next morning to enter a plea or go to trial.
The next morning, Woodall entered a plea that covered the two felony cases (07-2689 and 08-983), and the State nolle prossed the misdemeanor case (08-64). Woodall was sentenced in accordance with the plea agreement to a total of seven years' imprisonment. He later filed a rule 3.170(l) motion to withdraw his plea, claiming it was involuntarily entered. The motion was denied after an evidentiary hearing, and Woodall appealed.
On appeal, Woodall continues to argue his plea was involuntary, raising several of the same grounds he presented in his motion below. We find it is only necessary to address one of these issues to resolve the appeal, and that is Woodall's claim that his plea was rendered involuntary by defense counsel's failure to advise him about the favorable legal ramifications of his mother and stepfather's testimony in case number 08-983, which ended in a hung jury. He asserts that if he had been advised about the legal effect of their change in testimony, such as the resultant lack of substantive evidence of the charged offense, he would not have entered the plea agreement but would have proceeded again to trial.
In order to withdraw a plea after sentencing, a defendant must show a manifest injustice. See Williams v. State, 316 So.2d 267 (Fla.1975). The defendant can show a manifest injustice, for example, by proving his plea was involuntarily entered or that he was denied effective assistance of counsel. Id. at 273-74. A defendant who proves he received no advice from counsel about an available defense has a colorable claim of involuntariness and can demonstrate the requisite manifest injustice. See Panchu v. State, 1 So.3d 1243 (Fla. 4th DCA 2009); Brazeail v. State, 821 So.2d 364 (Fla. 1st DCA 2002). We conclude Woodall met this standard in the present case.
Woodall will not be heard to say he does not know what the evidence is in case number 08-983, since he attended the trial and heard the testimony of every witness. Nevertheless, it is undisputed that defense counsel failed to advise him of any of the favorable defense implications of the evidence as presented at trial. In particular, the change in testimony by Woodall's mother and stepfather at trial made it doubtful that the State could prevail on retrial. The impeachment of Woodall's mother and stepfather at trial by their prior inconsistent statements was just thatimpeachment evidence, which cannot be used as substantive evidence to prove he actually possessed a deadly weapon (i.e., the knife). See S.L. v. State, 993 So.2d 1108 (Fla. 4th DCA 2008); Santiago v. State, 652 So.2d 485 (Fla. 5th DCA 1995). Moreover, if the mother and stepfather testified on retrial consistently with their original police statements, they would be subject to impeachment with their testimony from the first trial.
Defense counsel did not explain any of this to Woodall. As a result, his plea was not voluntarily, knowingly, and intelligently entered, and he should have been permitted to withdraw it even after sentencing. To clarify, we do not hold that the State cannot prevail on a retrial in 08-983 (for example, on a lesser charge), but only that defense counsel should have explained the favorable legal effect and defense implications of the evidence at the mistrial. Woodall was prejudiced because he would not have entered the plea agreement had *422 counsel advised him that a lack-of-substantive-evidence defense was available. See Williams; Panchu; Brazeail.
Woodall indicated at the motion hearing that he understands the consequences of withdrawing his negotiated plea. That is, he knows it will put him in the same position in which he began, and the State can reinstate all of the charges in all three cases. See Forbert v. State, 437 So.2d 1079 (Fla.1983); Geiger v. State, 532 So.2d 1298 (Fla. 2d DCA 1988). Woodall will then be entitled to a jury trial in each of those cases.
In sum, we conclude the trial court abused its discretion in denying Woodall's rule 3.170(l) motion to withdraw plea. We therefore reverse and remand for the trial court to enter an order allowing Woodall to withdraw the plea and to conduct further proceedings consistent with this opinion.
REVERSED and REMANDED with instructions.
ORFINGER, J., concurs,
LAWSON, J., concurring and concurring specially, with opinion, in which ORFINGER, J., concurs.
LAWSON, J., concurring specially.
I concur in the majority opinion, but write to stress the uniqueness of this case, and to explain why it will have limited precedential value beyond these facts. In most cases a defense lawyer's failure to explain the legal effect of a particular witness' testimony or some other piece of evidence will not rise to the level of a manifest injustice requiring a trial court to grant a defendant's post-sentencing motion to withdraw plea. This case is unique in that Appellant's counsel made a series of mistakes culminating in Appellant's unwitting plea to a charge that the State could not prove.
Counsel's failures began during the trial of case number 08-983, when the State sought to cross-examine the victim (Appellant's step-father), with his out-of-court statements to police. Counsel should have requested an instruction limiting the use of this evidence to the jury's assessment of the witness' credibility. See State v. Smith, 573 So.2d 306, 316 (Fla.1990) ("Section 90.107 of the Florida Statutes (1987)[1] provides: `When evidence that is admissible as to one party or for one purpose, but inadmissible as to another party or for another purpose, is admitted, the court, upon request, shall restrict such evidence to its proper scope and so inform the jury at the time it is admitted.'") (emphasis in original); Lightfoot v. State, 591 So.2d 305, 306 (Fla. 1st DCA 1991). Because counsel failed to request that the evidence be admitted for the limited purpose of impeachment, *423 the statement was placed before the jury as substantive evidence. Id.; see also, Miller v. State, 780 So.2d 277, 279 (Fla. 3d DCA 2001); Martin v. State, 736 N.E.2d 1213, 1218 (Ind.2000); State v. Smith, 24 S.W.3d 274, 276 & 279-82 (Tenn. 2000); but see State v. Allien, 366 So.2d 1308, 1310-11 (La.1978). Counsel made the same mistake with respect to the State's other primary witness at trial Appellant's mother.
The witnesses' direct testimony was that they saw no knife, and neither saw nor felt any object that could have been a knife during Appellant's altercation with his step-father. Therefore, if counsel had sought to limit admission of the prior inconsistent statements to their proper scope, there would have been no substantive evidence from which a jury could have concluded that Appellant used a knife during the assault. See Butler v. State, 602 So.2d 1303, 1305 (Fla. 1st DCA 1992) ("those cases which have found that the evidence of possession of a ... `weapon' was legally sufficient have involved either direct testimony based upon actual observation of the weapon, or a clearly distinguishable portion of it; or substantial circumstantial evidence indicating possession of a weapon.") (citations omitted). Additionally, had counsel made the proper objections, evidence about the knife found in Appellant's truck would have also been properly excluded from evidence. E.g., O'Connor v. State, 835 So.2d 1226, 1231 (Fla. 4th DCA 2003) ("where the evidence at trial does not link a weapon seized to the crime charged, the weapon is inadmissible").
Even with the impeachment evidence admitted as substantive evidence, Appellant's lawyer could still have presented a viable motion for judgment of acquittal as to the aggravated assault charge on grounds that the evidence of Appellant's use of a weapon during the assault was contained only in prior inconsistent statements. This is because the Florida Supreme Court has held "`as a matter of law, that in a criminal prosecution a prior inconsistent statement standing alone is insufficient to prove guilt beyond a reasonable doubt.'" (Beber v. State, 887 So.2d 1248, 1252 (Fla.2004) (quoting State v. Moore, 485 So.2d 1279, 1281) (Fla.1986)). This ruling is founded on due process concerns, and applies even where the prior inconsistent statement is admitted as substantive evidence. Id. Although counsel did move for a judgment of acquittal, he did not make this argumentor cite to Beber.
Finally, Appellant's counsel allowed Appellant to plea to the charge that should have been resolved in Appellant's favor at trial, without explaining to him that the State did not have the evidence to convict him of the charge if the witnesses testified consistently with their trial testimony in a future proceeding.
It is the totality of these circumstances that compels us to find a manifest injustice requiring that Appellant be allowed to withdraw his plea.
ORFINGER, J., concurs.
NOTES
[1] Prior inconsistent statements that were made under oath subject to the penalty of perjury at a prior trial, hearing or other proceeding, or in a deposition, are admissible under Florida law as substantive evidence, so long as the declarant testifies at the trial or hearing at which the statement is offered, and is subject to cross-examination. § 90.801(2)(a), Fla. Stat. (2009); Pearce v. State, 880 So.2d 561, 569 (Fla.2004); but cf. State v. Green, 667 So.2d 756 (Fla.1995) (holding that statements made under oath at a discovery deposition in a criminal case do not qualify for admission as substantive evidence under section 90.801(2)(a)). Evidence of a prior inconsistent statement that is not admissible as substantive evidence under section 90.801(2)(1) is still admissible for impeachment purposes under section 90.614, Florida Statutes, as long as a proper foundation is laid for admission of the evidence. E.g., Jackson v. State, 961 So.2d 1104 (Fla. 5th DCA 2007). The statements at issue in this case were not made at a prior trial, hearing or other proceeding, and were therefore only admissible for impeachment purposesand not as substantive evidence. Id.