DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**VINCESON DAWSON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-1586

[July 10, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Barry M. Cohen, Senior Judge; L.T. Case No. 502017CF005156AXXXMB.

Carey Haughwout, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Joseph D. Coronato, Jr., Assistant Attorney General, West Palm Beach, for appellee.

DAMOORGIAN, J.

Vinceson Dawson ("Defendant") appeals his conviction and sentence for one count of trafficking in oxycodone in an amount greater than 25 grams but less than 100 grams and one count of possession of cocaine. Finding merit in Defendant's argument that the multiple references to collateral crimes evidence deprived him of a fair trial, we reverse and remand for a new trial.

On the date of Defendant's arrest, police were conducting surveillance of a house in Boynton Beach as they waited to execute a search warrant on the house. Defendant resided at the house. Officers observed Defendant park his gold Buick in the driveway of the house next door to the target house. Shortly thereafter, a male ("the passenger") pulled up into the same driveway and entered the passenger side of Defendant's vehicle. The passenger did not appear to have any items in his hands as he entered the vehicle.

Within seconds of the passenger entering the vehicle, several officers converged upon the vehicle. One of the officers observed Defendant sitting in the driver's seat with a yellow prescription pill bottle on his lap. A search of the vehicle revealed a baggy containing crack cocaine, cash, two cell phones, and prescription pill bottles and baggies containing oxycodone pills. In total, officers recovered from Defendant's vehicle approximately 250 oxycodone pills with a net weight of 33.766 grams. None of the items retrieved from the vehicle were tested for fingerprints or DNA.

Defendant denied having any knowledge about the contraband, cash, or cell phones found inside the vehicle and further denied having a pill bottle on his lap when officers converged on the vehicle. Defendant explained that although he owned the vehicle, he often allowed other people to use the vehicle. The passenger, in turn, insisted that he never observed a prescription pill bottle on Defendant's lap when officers converged on the vehicle.

At trial, the prosecutor and three of the State's witnesses referred to the fact that Defendant's house was under surveillance, that a search warrant related to narcotics had been issued, and that Defendant was the target. In each instance, defense counsel objected and moved for mistrial on the basis that the references were irrelevant and improperly inferred Defendant had previously engaged in illegal drug activity. Although the court sustained each objection, it denied the motions for mistrial and twice provided curative instructions.

The first reference occurred when the prosecutor asked one of the narcotics officers whether "an investigation [was] commenced which ultimately led to a lawful search of Mr. Dawson's residence?" Defense counsel objected before the officer could answer the question. The officer was permitted to testify, however, that a lawful search was ultimately conducted. The second reference occurred when a different officer testified that he was dispatched on the day in question to assist in the execution of a narcotics search warrant. The third reference occurred when a SWAT officer testified that he and his team were waiting nearby to execute the search warrant and "got the signal to move in when the defendant had arrived [and] we proceeded to the target."

During jury deliberations, the jury submitted the following question: "What was the warrant for and what address was the warrant to be executed at?" The court responded by telling the jury that the answer to the question must be found in the evidence presented at trial. The jury ultimately found Defendant guilty of trafficking in oxycodone and possession of cocaine as charged.

2

Defendant thereafter moved for new trial, arguing that the court erred in denying his motions for mistrial based upon the improper references to the search warrant. Defendant maintained that the cumulative references to the search warrant insinuated that Defendant had previously engaged in illegal drug activity which led to the issuance of a warrant to search his house. Moreover, although the court twice provided curative instructions, the instructions were clearly insufficient in light of the jury's question. Despite acknowledging that Defendant had "a very good appellate point," the court denied the motion. This appeal follows.

It is well established "that mistrial is a drastic remedy to be granted only when an error is so prejudicial as to vitiate the entire trial, and only when necessary to ensure the defendant receives a fair trial." *Jones v. State*, 128 So. 3d 199, 201 (Fla. 1st DCA 2013). One way in which a criminal defendant is prejudiced to the extent of necessitating a mistrial is when irrelevant collateral crimes evidence is erroneously admitted at trial. *Id.* The reason being that "the erroneous admission of irrelevant collateral crimes evidence is presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged." *Robertson v. State*, 829 So. 2d 901, 913–14 (Fla. 2002) (citations and internal quotation marks omitted).

The holding in *Jones* is instructive. In that case, the defendant was charged with first-degree murder and armed robbery with discharge of a firearm. *Jones*, 128 So. 3d at 200. During trial, the jury was informed on multiple, separate occasions that the defendant had previously been incarcerated and placed on probation and was a convicted felon. *Id.* The defendant objected to each reference and moved for mistrial, which the court denied. *Id.* During deliberations, the jury asked whether the defendant was on probation when he turned himself in and, if so, for what. *Id.* The court, in an attempt to cure the jury's consideration of the improper references to collateral crimes, instructed the jury to disregard any implication that the defendant had been convicted of unrelated crimes in the past. *Id.* The defendant was ultimately found guilty as charged and sentenced to two concurrent life sentences. *Id.* at 200–01.

In holding that the trial court erred in denying the defendant's motions for mistrial, the First District reasoned that "the multiple improper references to [the defendant's] prior convictions *and* the jury's question about them establish that [the defendant] was severely prejudiced in his defense." *Id.* at 201 (emphasis added). Moreover, the court held that the curative instruction was insufficient to "ameliorate the cumulative and obvious impact of the improper references." *Id.*; *see also Melehan v. State,*

126 So. 3d 1118, 1125 (Fla. 4th DCA 2012) (recognizing that although a curative instruction will generally obviate the necessity of a mistrial, "there are times when a curative instruction is not sufficient 'to unring the bell,' and a new trial is required" (quoting *Graham v. State*, 479 So. 2d 824, 826 (Fla. 2d DCA 1985))); *Morton v. State*, 972 So. 2d 1088, 1089 (Fla. 5th DCA 2008) ("When a jury is improperly informed of a defendant's prior criminal activity, a curative instruction has frequently been found to be insufficient to preserve a defendant's right to a fair trial.").

In the present case, although the prosecutor and witnesses did not directly state that Defendant was involved in prior criminal activity like the witnesses in *Jones*, the multiple improper references to the search warrant had the effect of informing the jury that Defendant's residence was the subject of illegal drug activity and that Defendant was the "target." The clear implication being that Defendant had previously engaged in illegal drug activity sufficient to justify a search warrant. Moreover, despite the two curative instructions, the multiple references to the search warrant clearly had an impact on the jury as evidenced by the question posed during deliberations.

The State nonetheless argues that the references to the search warrant were proper because they were inextricably intertwined with the crimes charged and necessary to demonstrate that that the seizing officers were in a position where they had a legitimate right to be. We disagree because it was unnecessary to inform the jury that Defendant's residence was the subject of a narcotics search warrant or that Defendant was the "target."

In order for collateral crimes evidence to be "inextricably intertwined," the evidence must be "necessary to (1) adequately describe the deed; (2) provide an intelligent account of the crime(s) charged; (3) establish the entire context out of which the charged crime(s) arose; or (4) adequately describe the events leading up to the charged crime(s)." *Dorsett v. State*, 944 So. 2d 1207, 1213 (Fla. 3d DCA 2006) (citations and internal quotation marks omitted).

Here, it was entirely unnecessary to inform the jury that Defendant was the target of a narcotics search warrant in order to establish the entire context out of which the charged crimes arose or to show a logical sequence of events leading up to Defendant's arrest. The State could have simply informed the jury that officers were executing a search warrant when they observed Defendant in the driveway of the adjacent house. *See Kates v. State*, 41 So. 3d 1044, 1046 (Fla. 1st DCA 2010) (holding that "even if evidence of an uncharged crime is inextricably intertwined with the charged offense and is thus admissible to establish the entire context

4

of the crime, unnecessary details must be excluded"). Although evidence of the search warrant was certainly relevant to explain the officers' presence at the scene, the details of the warrant were irrelevant and more prejudicial than probative. *See id.*

Alternatively, the State argues that the references to the search warrant were harmless because, by asking "[w]hat was the warrant for and what address was the warrant to be executed at," the jury evidently did not connect Defendant to the search warrant. Even if we were to assume that the jury did not directly connect Defendant to the search warrant, the fact remains that the jury clearly considered the search warrant during its deliberations. Under these circumstances, it is simply impossible to conclude beyond a reasonable doubt that the jury's verdict was not swayed by the improper references to the search warrant. *See O'Connor v. State*, 835 So. 2d 1226, 1232 (Fla. 4th DCA 2003).

Based upon the foregoing, the multiple references to the search warrant were improper and severely prejudiced Defendant as evidenced by the jury's question about the search warrant. Accordingly, Defendant is entitled to a new trial.

*Reversed and remanded for new trial.*

LEVINE, C.J., and KUNTZ, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***